2003-NMSC-004

61 P.3d 793

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Adam MONTOYA, Defendant–Appellant.**

No. 26,238.

Supreme Court of New Mexico.

Dec. 16, 2002.

Phyllis H. Subin, Chief Public Defender, Sheila Lewis, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

Patricia A. Madrid, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, NM, for Appellee.

## OPINION

MAES, Justice.

{1} Following a jury trial, Defendant was convicted of first-degree felony murder, contrary to NMSA 1978, § 30–2–1(A)(2) (1994), kidnaping, contrary to NMSA 1978, § 30–4–1 (1995), conspiracy to commit kidnaping, contrary to NMSA 1978, § 30–28–2 (1979) and Section 30–4–1, false imprisonment, contrary to NMSA 1978, § 30–4–3 (1963), and conspiracy to commit false imprisonment, contrary to Section 30–28–2 and Section 30–4–3. We have jurisdiction under Rule 12–102(A)(1) NMRA 2002 (providing for direct appeal to the Supreme Court for cases in which a sentence of life imprisonment has been imposed). On appeal, Defendant only challenges his felony murder conviction. Finding reversible error, we reverse Defendant's conviction for felony murder and remand for a new trial.

## FACTS

{2} Defendant worked for Michael Toney as a bodyguard. On the evening in question, the victim, Ty Lowery, was assisting Toney's former girlfriend, Sherrilyn Brown, in her efforts to remove her belongings from To-ney's residence in Las Cruces, New Mexico. Brown had decided to permanently end her relationship with Toney. Brown knew that Toney would be enraged upon discovering that she wanted to terminate their relationship and move out. Therefore, she requested the victim's assistance in removing her possessions from the residence. The victim reluctantly agreed and arranged to pick up Brown, and her belongings, outside the residence sometime after midnight. The two met as arranged, loaded up Brown's possessions in the victim's car, and returned to the victim's residence. Once there, Brown noticed that her purse was missing, and she convinced the victim to drive back to Toney's residence in order to retrieve the item. He again reluctantly agreed, and the two headed back.

{3} At about the same time, Toney discovered that Brown had moved out and became furious. Believing that Brown fled the residence on foot, Toney and another employee of his, Robert Aragon, armed themselves with automatic weapons and drove off in search of her. Claudia Moreno, Toney's current girlfriend, followed in a separate vehicle. Unable to locate Brown, Toney decided to return to his residence, where a party was in progress. In the process of making a u-turn, Toney got his vehicle stuck on the side of the road. A few of the guests at Toney's residence left the party to assist Toney in freeing his vehicle. Following unsuccessful efforts to do so, Toney and some of the guests gave up and returned to the party.

{4} Defendant, Aragon, and Odin Flores, all employees and friends of Toney, were still struggling with the stuck vehicle when Brown and the victim drove up. Brown asked Aragon if it would be ok if she and the victim drove to Toney's residence to get her purse. Aragon advised against it, but Brown and the victim drove to the residence nonetheless.

{5} Defendant, Flores, and Aragon were finally able to free the vehicle and drove back to Toney's residence. Upon their return, they came across a chaotic scene unfolding in the driveway. Brown and the victim were sitting in the victim's car. Toney had a weapon to the victim's head, and Moreno was

nearby wielding a rifle. Aragon also had a weapon, but Defendant was unarmed.

{6} Toney ordered Defendant to grab the ignition keys from the victim's vehicle, and he did so. The victim pulled out another set of keys, and Defendant grabbed those keys, also at Toney's insistence. At that moment, Moreno jumped in the back seat of the victim's car, put the rifle to victim's head, and began screaming at him. Toney shouted to Moreno to shoot the victim, and within seconds, Moreno discharged the rifle. The victim was seriously wounded and needed medical attention. Toney examined the victim's wounds to decide whether to take him to the hospital or to get rid of him. At that point, Aragon left the scene of the shooting.

{7} The following day, Aragon met with Defendant, who told him what had transpired after Aragon left. According to Aragon, Defendant said Toney told him to drive the victim "to the river and to leave him there." Defendant did so, driving the victim, in the victim's automobile, in a direction heading away from the area hospital. Aragon further testified that Defendant told him that while he was transporting the victim, he repeatedly hit him in the face to keep the victim down on the floor of the vehicle. Defendant abandoned the victim, who was still alive, in the victim's automobile on a levee a considerable distance off of the main highway. Defendant said that when he left, all the doors of the victim's vehicle were closed.

{8} The victim was found dead the next day. He had apparently managed to partially pull himself out of his vehicle prior to his death. Following the discovery of the victim, several individuals were questioned by the police, including Defendant. During his questioning, Defendant told police that he did not want to drive the victim anywhere, but Toney ordered him to take the victim to Black's Bridge, which was several miles away from Toney's residence. Defendant drove the victim toward Black's Bridge. Defendant turned onto a levee at Black's Bridge. Defendant drove along the levee before abandoning the vehicle and the victim near the bridge.

{9} Defendant was indicted and tried for first-degree murder (willful and deliberate),

contrary to Section 30–2–1(A)(1), first-degree murder (felony murder), in the alternative, as well as kidnaping, conspiracy to commit kidnaping, false imprisonment, and conspiracy to commit false imprisonment. At trial, Dr. Michael Markey, the pathologist who performed the autopsy, testified that the bullet entered the victim through the back of his right shoulder, causing extensive damage to his right lung and spinal cord. Dr. Markey opined that there was "some chance" that immediate medical attention could have prevented the victim's death. Later in his testimony, Dr. Markey stated that he thought it was still more than likely that the victim would have died even if he would have been taken to the hospital. Dr. Markey testified that the victim bled to death. Defendant was ultimately convicted, and this appeal followed.

## DISCUSSION

{10} Defendant argues on appeal that the trial judge erroneously gave the jury two contradictory instructions on causation, thereby confusing the jury on the correct standard of causation. Defendant submits that one instruction was the uniform jury instruction on causation, UJI 14–251 NMRA 1999 (prior to 2000 amendment), and the other instruction was the trial judge's supplemental verbal instruction that the State was not required to prove that Defendant's act was the but for cause of the victim's death.

{11} The jury instruction based on the then-current version of UJI 14–251 read:

> For you to find the defendant guilty of first degree murder (felony murder), the state must prove to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death of Ty Lowery.
>
> The cause of a death is an act which, in a natural and continuous chain of events, produces the death and without which the death would not have occurred.
>
> There may be more than one cause of death. If the acts of two or more persons contribute to cause death, each such act is a cause of death.

Under this version of UJI 14–251, the jury was required to find beyond a reasonable doubt "that the victim's death was brought

about by the defendant's act which, in a natural and continuous chain of events, produced the death of the victim and without which the death would not have occurred." *State v. Gabehart*, 114 N.M. 183, 185, 836 P.2d 102, 104 (Ct.App.1992). As we held in *State v. Simpson*, 116 N.M. 768, 772, 867 P.2d 1150, 1154 (1993), the language in UJI 14–251, which defines a cause of death as "an act which, in a natural and continuous chain of events, produces the death," "incorporates the notion of proximate cause and instructs the jury not to convict the defendant if he is only at fault to an insignificant extent." The UJI's other requirement that the defendant's act must be an act "without which death would not have occurred," incorporates the notion of factual causation, which generally asks whether the result would have happened when and as it did "but for" the defendant's act. *See State v. Muñoz*, 1998–NMSC–041, ¶ 22, 126 N.M. 371, 970 P.2d 143 (noting but for causation in the language "without which the death would not have occurred"); Joshua Dressler, *Understanding Criminal Law* § 14.02[A], at 182–183 (3d ed.2001) (describing factual causation's role in the causation analysis and explaining how factual causation is explained by the but for test). Under this portion of the paragraph, the jury is instructed to determine whether the defendant's act played any role whatsoever in the death. If it did, then it is a factual, or but for, cause of death.

{12} Under the revised UJI, the jury is required to find beyond a reasonable doubt that "[t]he act of the defendant was a significant cause of the death of [the victim]." *See* UJI 14–251 NMRA 2002. Paragraph two of the revised UJI provides that "[t]he defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred." *Id.*; *Muñoz*, 1998–NMSC–041, ¶ 1, 126 N.M. 371, 970 P.2d 143 (holding that "juries should ordinarily be instructed on foreseeability when intervening causation is an issue in a criminal case"). Thus, under the revised UJI a jury's guilty verdict is its determination that a defendant's act was a significant cause of the victim's death and

that its causal link to the death was continual and unbroken by any outside events. This is consistent with *Simpson's* requirement that there must be a significant causal connection between the defendant's act and the victim's death. *See Simpson*, 116 N.M. at 772, 867 P.2d at 1154.

{13} In this case, the prosecutor argued to the jury in closing that causation was defined in the second and third paragraphs of UJI 14–251 and that each paragraph defined causation differently. He told the jury that the definition of causation in paragraph two did not apply because there were "multiple causes" of death in this case and its definition did not address when a death results from multiple causes. He said the third paragraph was the only paragraph that defined multiple causes and therefore it was the only paragraph that applied to the facts of the case. He said under paragraph three's definition, if an act contributes to a death, it is a cause of death. To illustrate his point, he offered two examples as to how an individual could contribute to a result and still be considered a cause of the result. One example involved an individual contributing $50 to a $1.2 million campaign. The other example involved an individual casting a single vote for a candidate in a statewide election who wins by a landslide. He said in either case, the individual's contributing act caused the result to come about. No objection was made to the prosecutor's argument.

{14} In his rebuttal, defense counsel argued that the State had to prove that:

without [Defendant's] ... turning north [away from the hospital], beyond a reasonable doubt, [the victim] would have lived. And that's against the evidence. The State's witness, Dr. Markey, said that he probably would have died, very slight chance that he would have lived. The instructions do not say this. The instructions you have do not say that in order to convict [Defendant] you have to find that he foreclosed the chance or he took away a chance. The instruction says the law that you have to follow, the law that you took an oath to follow, says that you have to find beyond a reasonable doubt, but for [Defendant's] actions [the victim] would

not have died. You have to find, first, that in order to convict [Defendant], that [the victim] is dead beyond a reasonable doubt because of [Defendant].

This argument drew an immediate objection from the prosecutor. A bench conference then ensued.

{15} At the bench conference, the trial judge told defense counsel that he had "made this a but for causation rather than a proximate cause which is what [UJI 14–251] reads." Defense counsel argued that the UJI requires a showing of but for causation. The trial judge disagreed, stating that the UJI did not use the words "but for." The prosecutor argued that defense counsel's argument was "legally inaccurate" because paragraph three addresses multiple causes and states that if an act contributes to a result it is a cause of death. The trial judge told defense counsel that he had "misstated" the UJI because his argument was inconsistent with the definition found in paragraph three. The prosecutor asked the trial judge to give a curative instruction to the jury which the trial judge gave over defense counsel's objection. The trial judge instructed the jury that the State had objected to defense counsel's description of the causation standard in this case and that under UJI 14–251 the "State does not have to prove beyond a reasonable doubt that but for the defendant's actions Mr. Lowery would [not] have died." The trial judge then re-read the second and third paragraphs of the UJI to the jury.

{16} When defense counsel resumed his argument to the jury, he read the last portion of paragraph two verbatim. He told them that they must find "beyond a reasonable doubt that the death would not have occurred without" Defendant's act. The prosecutor objected and said in front of the jury that defense counsel was arguing the but for test again and that it was an "inaccurate statement of the law." At this point, the trial judge instructed the jury that "this is argument, this is not evidence. I want to caution you this is mere argument, this is [defense counsel's] interpretation of the instruction. As I read the instruction, it is a proximate causation instruction, and there are [two] parts of that causation."

{17} At a second bench conference, defense counsel told the trial judge that the UJI requires the State to show that the death would not have occurred without the defendant's act. The trial judge told defense counsel that his argument was incorrect because he was focusing on one act and not the multiple acts that caused the victim's death. The prosecutor argued that defense counsel's argument was "inaccurate" because under the UJI, the State may prove causation entirely under paragraph three if it can show that the defendant's act contributed to the death, which he said he could do. He requested another curative instruction which the trial judge refused to give because she did not want to emphasize the issue. The trial judge told defense counsel that she realized the confusion caused by the words "without which death would not have occurred." She told him that he and the prosecutor could argue their interpretations of the UJI to the jury but that he would have to move on with his argument.

## I. UJI 14–251 requires a showing of factual, or but for, causation.

{18} Defendant argues on appeal that UJI 14–251 requires a showing of but for causation. As a result, he argues that the trial judge gave the jury an erroneous instruction on causation when she instructed them that the State was not required to prove but for causation. The State concedes that UJI 14–251 requires a showing of but for causation, but argues that no error occurred because the trial judge instructed the jury, "in measured tones," on the correct legal standard, which is that the State has to prove that "Defendant's act were [sic] individually or *in combination* with the acts of others, the but-for cause of death." We disagree with the State's assertion that the combination of the trial judge's supplemental instruction and her re-reading of UJI 14–251 had the effect of instructing the jury that the State had to prove that Defendant's act was the but for cause of death when the trial judge's own explicit instruction to the jury was that the State did not have to prove that

Defendant's actions were the but for cause of the victim's death at all.

{19} As we noted above, UJI 14–251 requires a showing of but for causation. In this case, both the prosecutor and defense counsel misconstrued but for causation. This problem was exacerbated by the trial judge's instruction that but for causation did not have to be shown. The prosecutor's argument that any contribution is sufficient to find causation is wrong. In certain circumstances, "some wrongdoers have too minor a causal role to justify criminal punishment." *See* Dressler, *supra*, § 14.03[C][2], at 189. As the dissent correctly points out, a contributing cause must be more than "fault to an insignificant extent." *Simpson*, 116 N.M. at 772, 867 P.2d at 1154. Defense counsel, on the other hand, argued that the jury had to find his actions to be the sole cause of death, and that Defendant could not be liable for the victim's death because he would have probably died anyway. Criminal law only requires that a defendant be "a" but for cause of death and not "the" but for cause of death. *See* Dressler, *supra*, § 14.02[A], at 183; *see also Simpson*, 116 N.M. at 772, 867 P.2d at 1154 ("General principles of criminal law do not require that a defendant's conduct be the *sole* cause of the crime."). In cases where death results from multiple causes, an individual may be a legal cause of death even though other significant causes significantly contributed to the cause of death. Thus, even if the victim is at "death's door," a defendant is liable for the victim's death if his act hastens the victim's death. *See* 1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.12(b), at 395 (1986). In these cases, a defendant is a but for cause of death if the death would not have occurred at the time it did and in the manner it did but for defendant's actions. *See* Dressler, *supra*, § 14.02[C][2][b], at 186.

{20} We respectfully disagree with the dissent's assertion that paragraph three "explains but-for causation in the context of multiple causes." Rather, paragraph three explains the defendant's culpability for the death in cases where there are multiple causes of death by informing the jury that "this defendant *could be* guilty of murder even if his act was not the sole act causing death." *State v. Muñoz*, 1998–NMSC–048, ¶ 47, 126 N.M. 535, 972 P.2d 847 (emphasis added). In other words, paragraph three informs the jury that defendant's criminal liability for the death caused by his significant act is not negated merely because the death was caused by the significant acts of others.

{21} The dissent analogizes the "significant contribution" language in paragraph three with the substantial factor test. The substantial factor test only applies to situations "where two causes, *each alone sufficient to bring about the harmful result*, operate together to cause it." LaFave & Scott, *supra*, § 3.12(b), at 394 (1986) (emphasis added); *see* Dressler, *supra*, § 14.02[C][2][b], at 185–186 (discussing how some courts have borrowed the substantial factor test from tort law to describe factual causation in cases involving concurrent sufficient causes). Here, Defendant caused the death by kidnaping and abandoning the seriously wounded, immobilized victim. However, kidnaping alone is normally insufficient to cause death. Therefore, the substantial factor test would not apply. Moreover, it is "difficult to comprehend how a person's conduct can ever be a 'substantial factor' in causing a result that was going to occur when it did *even without his contribution*." Dressler, *supra*, § 14.02[C][2][b], at 186. In this case, Dr. Markey testified that the victim would have probably died even if he would have received immediate medical attention.

## II. Trial judge's supplemental instruction was reversible error.

{22} We conclude that the trial judge's supplemental instruction to the jury on causation was error. In its brief, the State suggests that the trial judge was simply reminding the jury that the State was not required to prove that Defendant's act was the only but for cause of death. However, the trial judge completely rejected defense counsel's assertion that but for causation had to be shown at all. She told defense counsel that he had "misstated" UJI 14–251 as a but for instruction when it was a proximate cause

instruction[1] and the UJI did not use the words "but for." However, as we noted in *Muñoz*, but for causation is encompassed in UJI 14–251. *Muñoz*, 1998–NMSC–041, ¶ 22, 126 N.M. 371, 970 P.2d 143. Therefore, the trial judge's instruction that the State was simply not required to prove but for causation was error.

{23} Defendant argues that the submission of these two complete and unambiguous instructions resulted in reversible error because it is impossible to determine if the jury followed the correct or incorrect instruction. We agree. We review jury instructions to determine whether a reasonable juror would have been confused or misdirected by the jury instructions. *State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994). We consider jury instructions as a whole, not singly. *Id.* at 41, 878 P.2d at 990. Where the jury is given "two contradictory instructions, each of which is complete and unambiguous, reversible error occurs because ... there is no way to determine whether the jury followed the correct or the incorrect instruction." *Id.* at 42, 878 P.2d at 991. In this case, the UJI instructed the jury that but for causation had to be shown while the trial judge instructed the jury that it did not have to be shown. Thus, we conclude that the trial judge's supplemental instruction could have confused the jury on the appropriate causation standard.

{24} The State argues that "any possible confusion caused by the judge's extemporaneous statement was fully cured by her re-reading of the UJI." We disagree. After the trial judge re-read the UJI, defense counsel again argued to the jury that it had to find but for causation as defined in paragraph two. The trial judge immediately instructed the jury that "this [was] [defense counsel's] interpretation of the instruction" and the way she read it, "there [were] [two] parts of that causation." This was consistent with what the prosecutor had argued to the jury earlier, specifically that the UJI contained two different definitions on causation,

that the definition in paragraph two did not "fit" because it did not refer to multiple causes, and that the definition in paragraph three was the correct standard in this case because it "says there may be more than one cause of death, and that's the case here." Therefore, the trial judge's instruction could have given the jury the impression that it could discount defense counsel's argument as his "interpretation" of a UJI that had two different definitions of causation, and that paragraph three and its specific reference to a death caused by multiple causes was directly on point because the evidence showed that the acts of others caused the victim's death. As a result, the jury could have incorrectly believed that causation could be found entirely under paragraph three. However, the jury was required to find that the death was "proximately caused by, or the 'natural and probable consequence of,' the accused's conduct," as provided in paragraph two. *See Simpson*, 116 N.M. at 772, 867 P.2d at 1154–1 (quoting 1 Charles E. Torcia, *Wharton's Criminal Law* § 26, at 124–26 (14th ed.1978)). Consequently, we hold that the trial judge's supplemental instruction that the State was not required to find but for causation was reversible error. *See Parish*, 118 N.M. at 41, 878 P.2d at 990 (holding that " 'an erroneous instruction cannot be cured by a subsequent correct one' ") (quoting *State v. Crosby*, 26 N.M. 318, 324, 191 P. 1079, 1081 (1920)).

### III. Sufficiency of the Evidence.

{25} Defendant argues that there was insufficient evidence to support his murder conviction because the State failed to prove the causation element. According to Defendant, regardless of whether the jury instructions created a reversible error, this Court "must consider all of the evidence in support of the conviction to determine whether [Defendant] is entitled to acquittal as opposed to retrial."

{26} Although we reverse Defendant's conviction and remand for a new trial

dant's act will only be considered a cause of death when it is recognized by the law as both a factual cause and proximate cause of death.

based on the trial judge's erroneous instruction to the jury on causation, we review *all* evidence to determine if there was sufficient evidence to support Defendant's murder conviction. *See State v. Rosaire,* 1996–NMCA–115, ¶¶ 20–21, 123 N.M. 250, 939 P.2d 597 ("We consider all of the evidence in support of conviction under the erroneous jury instruction to determine whether Defendant is entitled to acquittal as opposed to retrial."). In our review, we view all of the evidence in the light most favorable to support the jury's verdict. *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, we determine whether any rational jury could find all elements of the crime based on the facts presented at trial. *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992).

{27} In this case, in order to prove Defendant's guilt, the State presented evidence that (1) the victim had a chance to live after he had been shot, and (2) Defendant's actions ensured the victim's death by precluding the victim from receiving the necessary treatment. To support a finding that Defendant caused the death, the State offered the testimony of Dr. Markey, who testified that the victim bled to death from his gun wounds. *See People v. Brackett,* 117 Ill.2d 170, 109 Ill.Dec. 809, 510 N.E.2d 877 (1987) ("where the causal links are not immediately apparent, we frequently look to medical experts to assist the trier of fact in determining whether the defendant's acts constitute contributing factor to the victim's death"). Therefore, the shot was not immediately fatal as if he had been shot through the head or heart, which damage might be irrevocable. According to Dr. Markey, the victim would have had some possibility of surviving if he had received medical attention immediately. Specifically, the State asked Dr. Markey, "[a]ssuming that he bled for some period of time after this injury, if he promptly—and let's say maybe ten minutes to the hospital—promptly received medical treatment, would he have had a chance of [surviving]?" Dr. Markey answered, "I think that he would have had some chance, yes." During further direct examination, the State asked:

Q: ... in your opinion do you think it is more likely that he would have survived. Or more likely tha[t] he would have died anyway if he had been taken straight to the hospital?

A: I think it was still more likely that he would have died even if he would have been taken to the hospital.

Q: Okay, But, again, I gather you agree that being taken away from a hospital guaranteed his death?

A: Yes. Without medical treatment the wounds that were inflicted upon him would have resulted in his death.

This evidence permits a finding that the victim was not put on an unalterable course of death once he had been shot. Immediate medical intervention possibly could have saved his life.

{28} Having established evidence that the victim could have lived after having been shot, the State next had to show that Defendant's actions precluded any effort to transport the victim to the hospital, and therefore constituted a cause of death. The victim requested to be taken home after he was shot. The people at the scene of the shooting, including Toney and Aragon, discussed the option of taking the victim to the hospital. In fact, at one point, according to the testimony of Aragon, Toney, the alleged "ringleader" of the group, said "take [the victim] to the hospital." This raised the potential that the victim might have been taken to the hospital and furthermore, that Defendant removed all hope of this option by kidnaping him, driving him away and leaving him to die by the river.

■■■ {29} Defendant argues that the possibility that someone might have taken the victim to the hospital is mere speculation and should not be considered when weighing the sufficiency of the evidence. This Court does require that a conviction not rest upon mere speculation. *State v. Apodaca,* 118 N.M. 762, 766, 887 P.2d 756, 760 (1994). However, this should not mean that the jury cannot consider the potential remedial efforts available to a victim who has been wounded. Based upon the conversations that night and the indecision regarding what should be done with the victim, it is reasonable to infer that there was a substantial chance that someone

would have tried to save the victim by taking him to the hospital. Defendant's actions decided the matter for the group by driving the victim in a direction away from the hospital.

{30} The expert medical testimony and the discussion about taking the victim to the hospital combine to permit a conclusion that Defendant's actions were a cause in the death of the victim. Therefore, we hold that retrial is permissible and remand for a new trial consistent with this opinion. *See Rosaire*, 1996 NMCA 115, ¶ 20, 123 N.M. 250, 939 P.2d 597 ("We hold that where the trial court errs by failing to instruct the jury on an essential element of the crime, retrial following appeal is not barred if the evidence below was sufficient to convict the defendant under the erroneous jury instruction.").

*CONCLUSION*

{31} We conclude that the trial judge gave an erroneous instruction to the jury on causation and that this instruction resulted in reversible error. Therefore, we reverse Defendant's conviction for felony murder and remand for a new trial. We affirm Defendant's remaining convictions.

{32} **IT IS SO ORDERED.**

WE CONCUR: GENE E. FRANCHINI, PAMELA B. MINZNER and PAUL J. KENNEDY, Justices.

PATRICIO M. SERNA, Chief Justice (dissenting).

SERNA, Chief Justice (dissenting).

{33} I respectfully dissent. I agree with the majority that there is sufficient evidence to support Defendant's felony murder conviction. However, I believe that the trial judge's instructions as a whole adequately informed the jury of the requirements of factual and legal causation. I would therefore affirm.

{34} Based on UJI 14–251, the trial court initially instructed the jury that "[t]he cause of death is an act which, in a natural and continuous chain of events, produces the death and without which the death would not have occurred." There is no doubt that the language, "without which the death would not have occurred," conveys the requirement

of but-for causation. As a result, I agree with the majority that the trial judge improperly gave a verbal instruction to the jury that the State is not required to show but-for causation. This additional instruction created the potential for ambiguity on the issue of causation. However, I believe that the instructions as a whole satisfactorily cured any potential ambiguity, *see State v. Parish*, 118 N.M. 39, 42, 878 P.2d 988, 991 (1994) (stating that "if a jury instruction is capable of more than one interpretation, then the court must next evaluate whether another part of the jury instructions satisfactorily cures the ambiguity"), and I do not believe that the trial judge's misstatement caused any prejudice to Defendant. The trial judge emphasized to the jury that "there are [two] parts" to the causation instruction and that the jury "must consider the instructions as a whole." The trial judge also re-read the entire written standard for causation.

{35} UJI 14–251 provided at that time that "there may be more than one cause of death" and that "[i]f the acts of two or more persons contribute to the cause of death, each act is a cause of death." In this case, the State argued that there were multiple causes of death, that Defendants' acts contributed to the cause of death, and that, in combination, the shooting and Defendant's acts caused the victim's death. This argument is wholly consistent with the former version of UJI 14–251. It is also consistent with the present version of this instruction. Under the revised instruction, the State must demonstrate beyond a reasonable doubt that "[t]he act of the defendant was a significant cause of the death." UJI 14–251. A significant cause of death is defined as "an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred." *Id.* In the case of multiple causes of death, however, this definition is further refined: "There may be more than one significant cause of death. If the acts of two or more persons *significantly contribute* to the cause of death, each act is *a significant cause of death.*" *Id.* (emphasis added).

{36} In other words, the State can satisfy the requirement of but-for causation by

showing that the defendant's acts significantly contributed to the cause of death. *See State v. Muñoz*, 1998–NMSC–041, ¶ 23, 126 N.M. 371, 970 P.2d 143 (stating that for causation "there must be a significant link between the victim's death and the defendant's act"). The language in paragraph three is "merely elaborative of the primary instruction. Indeed, it expands, rather than contracts, the range of possible acts constituting the crime. . . ." *State v. Muñoz*, 1998–NMSC–048, ¶ 47, 126 N.M. 535, 972 P.2d 847 (citation omitted). Thus, the language in paragraph three explains but-for causation in the context of multiple causes and provides that a contribution to the cause of death is itself a factual cause of death. For example, in State v. Brown, 100 N.M. 726, 728, 676 P.2d 253, 255 (1984), this Court held that a murder conviction was adequately supported by evidence "that the defendant contributed to the victim's death by abandoning her injured, helpless and unconscious on a winter night." The Court concluded that "[t]he jury had substantial evidence from which it could conclude that the defendant's actions *caused or contributed* to the victim's death." *Id.* (emphasis added).

{37} New Mexico's significant contribution test is similar to what is known as the substantial factor test.

> [T]he test for causation-in-fact is more accurately worded, not in terms of but-for cause, but rather: Was the defendant's conduct a substantial factor in bringing about the forbidden result? Of course, if the result would not have occurred but for his [or her] conduct, his [or her] conduct is a substantial factor in bringing about the result; but his [or her] conduct will sometimes be a substantial factor even though not a but-for cause.

1 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 3.12(b), at 394–95 (1986) (footnote omitted). *See generally State v. Stone*, 758 So.2d 997, 1001 (La.Ct. App.2000) ("Whether the terms 'substantial factor' or 'clearly contributing cause' are used, these standards are used interchangeably and therefore, the basic determination is whether the defendant's act was a proximate cause of the victim's death."). Although this treatise appears to limit the application of the substantial factor test to independent sufficient causes of death, I believe that this limited view is inconsistent with paragraph three of UJI 14–251 and with *Brown*. Other jurisdictions have similarly applied the substantial factor test more broadly. *See, e.g., State v. Kalathakis*, 563 So.2d 228, 232 (La. 1990) ("[L]egal cause in criminal cases requires that the defendant's act was a substantial factor in bringing about the forbidden result.") (quotation marks and quoted authority omitted). I would apply the substantial factor test outside of the limited context of independent sufficient causes because the test "serves to emphasize common sense," Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 780 (3d ed.1982), and "[i]n the determination of proximate cause common sense is not to be eliminated," *State v. Landgraf*, 1996–NMCA–024, ¶ 31, 121 N.M. 445, 913 P.2d 252 (quoted authority and quotation marks omitted) (alteration in original). Ultimately, the application of this test is a matter of statutory construction, and as this Court has stated, "there is not the slightest suggestion [in Section 30–2–1] that if there are multiple individuals responsible for the death that any of them is less guilty of the crime of murder." *Muñoz*, 1998–NMSC–048, ¶ 47, 126 N.M. 535, 972 P.2d 847. By establishing a significant contribution, in combination with another's acts, the State has proved but-for causation under UJI 14–251. *See Simpson*, 116 N.M. at 772, 867 P.2d at 1154 ("General principles of criminal law do not require that a defendant's conduct be the *sole* cause of the crime.").

{38} The trial judge gave the verbal instruction because defense counsel improperly argued that the State had to prove beyond a reasonable doubt that the victim would have lived but for Defendant's acts. As the majority states, to establish but-for causation, the State was required to show only that without Defendant's actions the victim would not have died in the same manner and at the same time as he did; the State did not have to prove that the victim would have survived the gunshot wound without Defendant's acts.

{39} The evidence in this case established that the victim was alive immediately after

the shooting and, in fact, asked Sherrilyn Brown to take him home. The victim was still alive during the time Defendant drove him to the isolated location and resisted the kidnaping enough to prompt Defendant to beat him in order to keep him on the floor of the vehicle. Finally, the victim was alive even after Defendant abandoned him, partially crawling out of the vehicle. The medical examiner testified that the victim bled to death. It is reasonable to infer from these facts that Defendant's act of isolating the victim and preventing medical treatment hastened or accelerated the victim's death and that the victim would have lived longer than he did, even if by a matter of hours, had he received medical treatment. Defendant, who the jury found acted with an intent to kill or with the knowledge that his acts created a strong probability of death or great bodily harm, is still guilty of murder even if he merely hastened the victim's death. *See Holsemback v. State*, 443 So.2d 1371, 1382 (Ala.Crim.App.1983) ("To render a defendant guilty, it is not necessary that the blow given by him [or her], or his [or her] wrongful act, was the sole cause of death. Even if the blow or act was only a partial cause accelerating death, the defendant is nevertheless guilty."); *Lawson v. State*, 274 Ga. 866, 561 S.E.2d 72, 73 (2002) (similar); *Williams v. State*, 669 N.E.2d 1372, 1387 (Ind.1996) (affirming a murder conviction even though the victim was fatally wounded when the defendant shot her because the defendant's act hastened death " 'by minutes' "); *Adcock v. Commonwealth*, 702 S.W.2d 440, 444 (Ky. 1986) ("[T]he hastening of a death which would not otherwise have occurred at that time is a cause of the death."); *State v. Matthews*, 450 So.2d 644, 646 (La.1984) (stating that "[i]t is not essential that the act of the defendant should have been the sole cause of the death; if it hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause, that is sufficient") (alteration in original) (quotation marks and quoted authority omitted); *see also* 1 LaFave & Scott, *supra*, § 3.12(b), at 395 ("[O]ne who hastens the victim's death is a cause of [the] death.").

{40} In response to defense counsel's legally incorrect argument that the State had to prove that the victim would have survived but for Defendant's acts, the trial court should have instructed the jury that but-for causation can be established by showing a significant contribution to the cause of death, instead of instructing the jury that but-for causation need not be proved. Nonetheless, the instructions as a whole, and the trial court's particular direction to the last paragraph of the uniform jury instruction, adequately informed the jury of the cause-in-fact aspect of the causation element. I do not believe that the trial court's incorrect remark affected the jury's understanding of the basic requirement of causation. *Cf. State v. Coffin*, 1999–NMSC–038, ¶ 29, 128 N.M. 192, 991 P.2d 477 ("Viewing the response to the jury in context with the jury instruction itself, we determine that the response could not have caused confusion or created ambiguity concerning the requisite mens rea. . . . Thus, we conclude that the trial court's response to the jury, though deficient, did not constitute error. . . ."). Because the trial court properly instructed the jury on paragraph three and the State satisfied this standard of causation, I believe "it is proper and just to hold the defendant criminally responsible for the consequences of his ... unlawful behavior." *Muñoz*, 1998–NMSC–041, ¶ 22, 126 N.M. 371, 970 P.2d 143.

{41} I agree with the majority that paragraph three should not be given in isolation, that the substantial factor test is "one of exclusion only," Perkins & Boyce, *supra*, at 780, and that the jury must also be informed of the requirement of proximate causation. However, I do not believe that the trial judge's verbal instruction eliminated this aspect of causation. In fact, the trial judge specifically told the jury that "as [she] read[s] the instructions, it is a proximate causation instruction," and she included the proximate cause language of the instruction when she re-read it to the jury. The judge was particularly concerned that defense counsel singled out the "without which" language and omitted the proximate cause context of a natural and continuous chain of events. Following the second bench conference, defense counsel, without objection by

the prosecutor or comment by the judge, argued to the jury that it had to find that

in this string of things that happened from the time Claudia Moreno shot [the victim], that through that whole thing up until the time [the victim] died, [Defendant] did things which were a cause of the death, beyond a reasonable doubt. But in the natural and continuous chain of events which [produced] the death, the actions of [Defendant] were something without which death would not have occurred.

With respect to the judge's admonition to the jury that argument of counsel is not evidence, this instruction was proper. *See* UJI 14–104 NMRA 2002. In addition, the judge explained,

I don't think I've told them to disregard what you have said[;] I've told them to listen very carefully. I've told them they can disregard a misstatement of the law, and they're going to have to determine for themselves how this law applies to the facts as you have argued them.

The trial judge's verbal instruction was based on her legitimate concern about defense counsel's distortion of but-for causation and, in my view, had no impact on the jury's understanding of proximate causation.

{42} The majority relies on the rule that an erroneous instruction cannot be cured by a subsequent correct one. While I agree that the judge erroneously instructed the jury that the State did not have to prove but-for causation, I disagree with the application of this rule to the present case. As this Court has previously held, this rule applies only if the impugned instruction is "complete, unambiguous, and certain." *State v. Crosby*, 26 N.M. 318, 325, 191 P. 1079, 1081 (1920); *accord Parish*, 118 N.M. at 41–42, 878 P.2d at 990–91. On the other hand, "[i]f this instruction were ambiguous and incomplete, and also capable of another, different, and correct interpretation . . ., it might then be cured by [a] subsequent instruction." *Crosby*, 26 N.M. at 324, 191 P. at 1081. The trial court's verbal instruction that the State was not required to demonstrate that but for Defendant's acts the victim would have survived was neither complete nor unambiguous. It was incomplete because it told the jury

what the State did not need to prove without telling the jury what the State did need to prove. The trial judge referred the jury to the written instructions for this latter piece of information. The verbal instruction was also ambiguous because it was capable of different interpretations. The instruction could be viewed as simply informing the jury of the legally accurate fact that, as discussed above, the State need not prove that the victim would have survived the gunshot wound. In contrast, it could also be viewed as improperly eliminating the but-for causation requirement. As a result, the verbal instruction does not represent an incurable error, and it is necessary to view the instructions as a whole in order to determine whether a reasonable juror would have been confused by the verbal instruction. *Cf. State v. Lucero*, 110 N.M. 50, 52, 791 P.2d 804, 806 (Ct.App.1990) ("The trial court's statement that there were two sides to every lawsuit was capable of different interpretations. . . . Because the statement was ambiguous, we examine the instructions as a whole."). In my view, the trial judge's second reading of the written jury instruction providing the correct standard for causation satisfactorily cured any ambiguity in the verbal instruction.

{43} To me, the prosecutor's closing argument is much more troubling than the court's verbal instruction to the jury. The prosecutor argued that a contributing cause can be the equivalent of a $50 donation to a $1.2 million campaign or a single vote in a statewide election. This argument comes dangerously close to advocating the legally incorrect standard of "fault to an insignificant extent," *State v. Simpson*, 116 N.M. 768, 772, 867 P.2d 1150, 1154 (1993). Nonetheless, Defendant did not object to this argument or raise this issue on appeal, and in any event, I presume that the addition of the words "significant" and "significantly" to the revised instruction will clarify this matter on remand.

{44} It appears to me that the real difficulty in the present case is the prosecutor's decision to proceed only on a theory of principal liability for felony murder. The discussion of but-for causation in the context of multiple causes almost always distinguishes

between completely independent acts and those done in concert. *See, e.g.*, 1 LaFave & Scott, *supra*, § 3.12(b), at 394.

> When assailants act in concert each is, of course, liable for his [or her] own actions, and also vicariously liable for the acts of the others.... *Since these acts are, taken together, a but-for cause of death, the liability of each participant is clear.* The only difficult case is one that arises most infrequently, when the conduct of two actors is completely independent....

Model Penal Code § 2.03 cmt. 2 (1962) (emphasis added). Indeed, under UJI 14–2821 NMRA 2002, liability for felony murder under an accomplice theory can be based on the defendant having "helped, encouraged or caused the killing to be committed." *See State v. Harrison*, 90 N.M. 439, 441–42, 564 P.2d 1321, 1323–24 (1977) (stating that "causation consists of those acts of defendant *or his [or her] accomplice* initiating and leading to the homicide") (emphasis added). For multiple perpetrators acting in concert, the subtleties surrounding causation disappear. *See People v. Caldwell*, 36 Cal.3d 210, 203 Cal.Rptr. 433, 681 P.2d 274, 280 (1984) ("Decisions in cases involving conduct of more than one co-felon acting in concert reflect the settled view that the extent of an individual's contribution to the resulting death need not be minutely determined."); 1 LaFave & Scott, *supra*, § 3.12(b), at 396 ("Of course, in all these cases involving two assailants, if A and X are not acting independently, but are working together to cause B's death, one is as guilty as the other on general principles concerning accomplices in crime, no matter which one actually applies the coup de grace.").

{45} In this case, Defendant's acts are not completely independent of the acts of Toney and Moreno. The jury convicted Defendant of conspiring with Toney to commit false imprisonment and kidnaping, and the evidence supports a reasonable inference that Toney's orders, Moreno's shooting, and Defendant's false imprisonment and kidnaping combined to accomplish the common design of killing the victim. Under these circumstances, the question of causation in this case should not be as difficult as it has become

under its current posture. Of course, because accomplice liability is not a separate offense, *see State v. Nance*, 77 N.M. 39, 45–47, 419 P.2d 242, 246–47 (1966), the principle of double jeopardy does not preclude the State from proceeding on a theory of accomplice liability on remand, nor would the trial court be precluded from instructing the jury on this theory if it is supported by the evidence, *see State v. Wall*, 94 N.M. 169, 171–72, 608 P.2d 145, 147–48 (1980).

{46} For the reasons articulated above, I would affirm Defendant's felony murder conviction. The majority holding otherwise, I respectfully dissent.