1998-NMSC-041

970 P.2d 143

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Manuel MUNOZ, Defendant–Petitioner.**

No. 24054.

Supreme Court of New Mexico.

Nov. 17, 1998.

Phyllis H. Subin, Chief Public Defender, Nina Lalevic, Assistant Appellate Defender, Santa Fe, for Petitioner.

Tom Udall, Attorney General, Joel Jacobsen, Assistant Attorney General, Santa Fe, for Respondent.

## OPINION

FRANCHINI, Chief Justice.

{1} Manuel Munoz (Defendant) seeks reversal of his convictions for vehicular homicide and great bodily injury by vehicle. He asserts that a jury instruction patterned on UJI 14–252 NMRA 1998 (negligence of the deceased) shifted the burden of proof from the State's shoulders to his own. He also contends that UJI 14–252 fails to explain adequately to juries the law of intervening causation. We reject Defendant's burden-shifting argument, but we hold that juries should ordinarily be instructed on foreseeability when intervening causation is an issue in a criminal case. In this case, however, failure to instruct the jury on foreseeability was not reversible error because Defendant never contested the issue and because no rational jury could find that the fatal, injury-producing accident in this case was not a foreseeable result of Defendant's actions.

## FACTS AND PROCEDURAL POSTURE

{2} On the night of May 5, 1995, Defendant's north-bound vehicle collided with a west-bound vehicle at the intersection of Solano Avenue and Griggs Street in Las Cruces, New Mexico. At trial, a witness who had been traveling south on Solano that night testified that a short time before the accident Defendant's car veered into his lane at a high rate of speed. Fortunately, the witness was able to avoid a collision by swerving to the side of the road and Defendant also veered back into his own lane. The witness soon saw police and an ambulance pass by, and he followed those vehicles to the accident scene at Solano and Griggs.

{3} There, he found that Defendant's Oldsmobile Toronado had smashed into Jason Jiron's Datsun 210, demolishing it. Evidence at trial indicated that Defendant was driving between 64 and 71 miles per hour in a 35 mile per hour zone, that he had lost control of his vehicle as it entered the intersection, and that he did not attempt to slow down prior to impact. Jason was killed by the tremendous force of the crash, which according to one of the attending emergency medical technicians, rammed the "driver's door ... in over the transmission" and left Jason "in the lap of the passenger." Jason's passenger, Joe Shelton, III, suffered a broken shoulder, three broken ribs, a broken pelvis, and serious internal injuries, including traumatic brain injury.

{4} Upon their arrival at the scene of the accident, several police officers noticed an odor of alcohol emanating from Defendant. One officer administered a number of standard field sobriety tests, all of which Defendant failed. When Defendant's blood was drawn approximately an hour after the accident, his blood-alcohol concentration was 0.17, more than twice the legal limit of 0.08. See NMSA 1978, § 66–8–102(C) (1953, as amended through 1993).

{5} Defendant argued at trial that Jason had run the stop sign at the intersection and that Defendant therefore bore no criminal responsibility for Jason's death or his passenger's injuries. Conflicting evidence was pre-

sented by Defendant and the State as to whether Jason had run the stop sign. The issue of Defendant's guilt was submitted to the jury.

{6} The jury was instructed on the elements of vehicular homicide in the following manner:

For you to find the defendant guilty of causing death by vehicle as charged in Count I[,] the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:

1. The defendant operated a motor vehicle while under the influence of intoxicating liquor or in a reckless manner;

2. The defendant thereby caused the death of Jason Jiron;

3. This happened in New Mexico, on or about May 5, 1995.

See UJI 14–240 NMRA 1998 (Instruction No. 2). The jury was similarly instructed on the elements of great bodily injury by vehicle. Id. (great bodily injury by vehicle alternative) (Instruction No. 3). On the element of causation, there were two further instructions. The first one, Instruction No. 6, instructed the jury that the State was required to prove that Defendant caused Jason's death, defining causation as follows:

For you to find the defendant guilty of causing death by vehicle, as charged in Count I, the State must prove to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death of Jason Jiron.

The cause of a death is an act which, in a natural and continuous chain of events, produces the death and without which the death would not have occurred.

There may be more than one cause of death. If the acts of two or more persons contributes to cause death, each such act is a cause of death.

See UJI 14–251 NMRA 1998. The second supplemental instruction on causation, In-

struction No. 7, instructed the jury on Defendant's theory of intervening causation; it read:

Negligence of the deceased, or some other person, which may have contributed to the cause of death does not relieve the defendant of responsibility for an act which also contributed to the cause of the death. However, if you find that negligence of the deceased, or some other person, was the only cause of death, then the defendant is relieved of all responsibility for the death of the deceased.

See UJI 14–252.[1]

{7} The jury found Defendant guilty of vehicular homicide and great bodily injury by vehicle. Defendant appealed to the Court of Appeals, asserting several points of error. The Court of Appeals affirmed by memorandum opinion, and we granted Defendant's request for certiorari to consider whether Instruction No. 7 shifted the burden of proof to Defendant to prove his innocence and whether Instruction No. 7 adequately instructed the jury on the concept of intervening causation. We affirm Defendant's convictions.

## DISCUSSION

### Standard of Review

{8} "The propriety of jury instructions given or denied is a mixed question of law and fact." State v. Salazar, 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "Mixed questions of law and fact are reviewed de novo." Id.

### Whether Instruction No. 7 Shifted the Burden of Proof to Defendant

{9} "In a criminal prosecution the State has the burden of proving each element of the offense charged beyond a reasonable doubt." State v. Chouinard, 96 N.M. 658, 660, 634 P.2d 680, 682 (1981). Defendant argues that Instruction No. 7 effectively lodged the burden of proof on his shoulders by obliging him to prove, as a prerequisite for acquittal, that the victim was the sole

1. We note that UJI 14–251 and UJI 14–252 by their terms appear to be directed solely at supplementing the causation element of vehicular homicide, not great bodily injury by vehicle. We

are inclined to think the omission is at most harmless error, but since Defendant does not make an issue of the matter, we do not decide it.

cause of the accident. In making this argument, Defendant focuses narrowly on the phrase "if you find" in the second sentence of Instruction No. 7, which reads, "However, *if you find* that negligence of the deceased, or some other person, was the only cause of death, then the defendant is relieved of all responsibility for the death of the deceased." (Emphasis added.) *See* UJI 14–252.

{10} A California court has addressed this argument. *See People v. Welborn,* 242 Cal.App.2d 668, 51 Cal.Rptr. 644, 649 (Cal. Dist.Ct.App.1966). The court there summarized the issue succinctly: "It is contended the instruction given by inclusion of the phrase 'if you find' seemed to tell the jury that there was some obligation on the part of the defense to establish innocence." *Id.* The court rejected this argument, holding that the bare phrase "if you find" provided no basis for inferring that the defendant bore the burden of proof. *Id.* In reaching its conclusion, the court noted that the trial judge had "clearly and unequivocally" instructed the jury that the prosecution had the burden of proof and that the defendant was presumed innocent. *Id.* We reach the same conclusion here.

{11} Here, as indicated above, Instruction No. 2 advised the jury that in order to convict Defendant of vehicular homicide, *"the [S]tate must prove* to your satisfaction beyond a reasonable doubt" each of the elements of the crime. (Emphasis added.) *See* UJI 14–240. Additionally, Instruction No. 5 provided that, for the jury to find Defendant guilty of vehicular homicide, *"the State must prove* to your satisfaction beyond a reasonable doubt that the defendant acted intentionally when he committed the crime[ ]." (Emphasis added.) *See* UJI 14–141 NMRA 1998. Moreover, as set forth above, Instruction No. 6 explicitly specified for the jury that *"the State must prove* to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death of Jason Jiron." (Emphasis added.) *See* UJI 14–251. Finally, Instruction No. 11 admonished the jury that "[t]he law *presumes the defendant to be innocent* unless and until you are satisfied beyond a reasonable doubt of his guilt" and further reiterated that *"[t]he burden is*

*always on the State* to prove guilt beyond a reasonable doubt." (Emphasis added.) *See* UJI 14–5060 NMRA 1998.

■ {12} " '[I]nstructions must be considered as a whole, and not singly . . . .' " *State v. Parish,* 118 N.M. 39, 41, 878 P.2d 988, 990 (1994) (quoting *State v. Crosby,* 26 N.M. 318, 324, 191 P. 1079, 1081 (1920)). Reading the instructions as a whole, we hold—as did the Court of Appeals—that a reasonable juror would not have been confused as to whether the State or Defendant bore the burden of proof on the issue of whether Defendant committed vehicular homicide. *See id.* at 42, 878 P.2d at 991 (standard against which court reviews instructions is that of a reasonable juror). Instruction Nos. 2, 5, 6, and 11 were clear and unequivocal that the burden of proof rested on the State.

{13} While acknowledging that Instruction Nos. 2, 5, 6, and 11 correctly placed the burden of proof on the State, Defendant contends that Instruction No. 7 commanded the jury "to acquit if (*and only if*) the jury 'found' a superseding cause of death," thereby creating a conflict in the instructions. (Emphasis added.) *See id.* at 42, 878 P.2d at 991 (*conflicting instructions necessitate reversal because it is impossible to determine whether the jury followed the correct instruction or an incorrect one*). This argument is fallacious. Instruction No. 7 did not instruct the jury to presume Defendant guilty if the victim was not the sole cause of his own death. Defendant did not have to prove, as a prerequisite for acquittal, that the victim was the sole cause of the accident. Rather, the State had to make a causal connection between Defendant's actions and the fatal collision or else Defendant was to be acquitted. As suggested above, Instruction No. 6 made this clear by specifying for the jury that "the State must prove to your satisfaction beyond a reasonable doubt that the act of the defendant caused the death of Jason Jiron." *See* UJI 14–251.

■ {14} Instruction No. 6 and Instruction No. 7 were complementary, not conflicting. As the "Use Note" for UJI 14–251 (Instruction No. 6) directs, UJI 14–252 (Instruction No. 7) is to be given in certain "specific" causation situations, namely when

the negligence of the deceased or a third person is at issue. Instruction No. 7, then, simply served to place before the jury Defendant's theory that the victim's alleged negligence was an intervening or superseding cause of the accident and the victim's resulting death. *See State v. Simpson*, 116 N.M. 768, 772, 867 P.2d 1150, 1154 (1993) ("The conduct of other parties is relevant only if it is a superseding cause that negates the defendant's conduct."); *State v. Romero*, 69 N.M. 187, 191, 365 P.2d 58, 60 (1961) (" '[A] homicide due solely to the negligence of the decedent imposes no criminal liability on the driver of the automobile which killed him.' " (quoting Annotation, *Homicide or Assault in Connection with Negligent Operation of Automobile or Its Use for Unlawful Purpose or in Violation of Law*, 99 A.L.R. 756, 833 (1935))). As the Court of Appeals correctly recognized, refusal to instruct the jury according to the language contained in UJI 14–252 constitutes reversible error if a reasonable view of the evidence supports the instruction, as it did here. *See Poore v. State*, 94 N.M. 172, 174, 608 P.2d 148, 150 (1980).

{15} Defendant's theory that the victim's alleged negligence intervened to cause the accident was aimed, of course, at exoneration. Such a theory, however, is not an affirmative defense on which a defendant bears the burden of proof. *Cf. Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) (under the federal constitution, a state may properly place the burden on defendant to prove an exculpatory affirmative defense). Instead, this type of argument is merely one of many ways in which the defense may attempt to cast doubt on the State's case that the accused caused the death at issue. *Cf. State v. McGuire*, 110 N.M. 304, 313, 795 P.2d 996, 1005 (1990) ("[A]n alibi is not a technical or 'legal' defense, but an attempt to cast doubt on the proof of the elements of the crime ....").

{16} Here, the jury's verdict indicates that it had no reasonable doubt that Defendant's impairment from alcohol or his reckless driving, or both, contributed to the collision between Defendant's car and the victim's car, resulting in the victim's death. The jury's verdict is its statement that the State met its burden of proof on causation. The fact that the jury rejected Defendant's theory of causation provides no basis for questioning the jury's understanding of the locus of the burden of proof. Defendant's argument that the bare phrase "if you find" somehow transformed Instruction No. 7 from a potentially exonerating instruction on causation into an erroneous and conflicting instruction on the burden of proof is without merit.

*Whether Instruction No. 7 Adequately Instructed the Jury on Intervening Causation*

{17} Defendant argues that the instructions did not adequately instruct the jury on intervening causation. In particular, Defendant points out that the concept of foreseeability is wholly missing from Instruction No. 7. Additionally, Defendant asserts that Instruction No. 7 should have framed the issue of intervening causation so that the question for the jury was whether the victim's actions played such a role in causing the accident that they should be deemed to "surpass" Defendant's actions.

{18} We agree with Defendant's contention that in a criminal proceeding the jury ordinarily should be instructed on foreseeability as a component of intervening causation. *See People v. Webb*, 163 Mich.App. 462, 415 N.W.2d 9, 10 (Mich.Ct.App.1987) ("The concept of an intervening cause is predicated upon foreseeability."). *Accord* UJI 13–306 NMRA 1998 (civil instruction on intervening cause, defining such a cause, in part, as one that "produces that which was not foreseeable as a result of an earlier act or omission"). Here, however, failure to instruct the jury on foreseeability was not reversible error. As the State points out, Defendant has never argued that the collision or Jason's death and his passenger's severe injuries were unforeseeable. To the contrary, Defendant acknowledged at trial that he believed the intersection of Solano and Griggs to be a dangerous one because drivers on Griggs frequently inch out past the stop sign to view cross-traffic on Solano. Moreover, whatever Defendant's subjective belief about the intersection and the possibility of a collision, no rational jury could conclude that the

accident or resulting death and injuries were unforeseeable given the manner in which Defendant was driving and the degree to which he was intoxicated. *See Lewek v. State,* 702 So.2d 527, 531 (Fla.Dist.Ct.App.1997) (holding that the defendant need not have foreseen the specific circumstances of a fatal accident but simply that the same general type of harm might occur as a result of his actions); *see also State v. Lopez,* 1996–NMSC–036, ¶ 13, 122 N.M. 63, 920 P.2d 1017 (reviewing court will affirm where omitted element was " 'undisputed and indisputable,' and no rational jury could have concluded otherwise" (quoting *State v. Orosco,* 113 N.M. 780, 786, 833 P.2d 1146, 1152 (1992))).

■ {19} We disagree with Defendant's suggestion that in order to be convicted of vehicular homicide his actions must be deemed to "surpass" any contributing actions of the victim. In support of his position, Defendant cites the dissenting opinion in *People v. Tims,* 449 Mich. 83, 534 N.W.2d 675, 693 (Mich.1995), for the proposition that the defendant's actions should be found to have "sufficiently dominated" all other contributing factors of a fatal accident in order for the jury to return a guilty verdict. In New Mexico, the doctrine of contributory negligence has been abolished in tort cases, *see Scott v. Rizzo,* 96 N.M. 682, 690, 634 P.2d 1234, 1242 (1981), but Defendant contends that such a standard or a similarly high standard is necessary in vehicular homicide cases because of the grave consequences of a criminal conviction. *Cf. Tims,* 534 N.W.2d at 690 (Cavanagh, J., dissenting) (noting that criminal penalties are generally "far more burdensome" to defendants than tort remedies and that, "unlike tort law, which apportions liability among the responsible parties, criminal law is an all-or-nothing decision of guilty or not guilty"). We are not persuaded by this reasoning.

■ {20} Defendant misunderstands the purpose of the vehicular homicide statute. The purpose of the vehicular homicide statute is not to apportion percentages of fault for an accident, but to punish reckless driving or impaired driving when such conduct results in death or great bodily injury. *See* NMSA 1978, § 66–8–101(C) (1978, as amended through 1991) (third degree felony). As such, a determination of guilt, though "all" rather than "nothing" in terms of its grave consequences for the defendant, is not a finding that the defendant is one hundred percent responsible for causing the accident. Instead, it is a judgment that the defendant should be held criminally responsible for his or her role in causing death or serious bodily injury to another human being.

{21} As the Court of Appeals observed, Defendant's argument is really the same argument made in *Simpson,* 116 N.M. at 771, 867 P.2d at 1153, attacking the fact that a defendant may be found guilty of vehicular homicide even if his unlawful act was only one among several causes of a fatal accident. In *Simpson,* this Court held that the language in UJI 14–251 defining a cause of death as "an act which, *in a natural and continuous chain of events,* produces the death" instructs the jury "not to convict the defendant if he is only at fault to an insignificant extent." *Id.* at 772, 867 P.2d at 1154 (emphasis added). Conversely, of course, the jury should convict the defendant if he is at fault to a significant extent.

■ {22} As in *Simpson,* we decline to speculate what percentage of fault is "significant" or "insignificant" because that determination is to be made by the jury. The jury need not ascertain a numerical percentage of fault; rather, its verdict is its answer to the question of whether the defendant was at fault to a significant extent or not. We note that, in vehicular homicide cases, a showing of "but for" causation is often sufficient to support a conclusion that the defendant's degree of fault is significant. Such a showing establishes that "but for" the unlawful act or acts of the defendant the accident would not have been fatal. *See* UJI 14–251 (a cause of death is an act "without which the death would not have occurred"). Thus, a jury's guilty verdict in a vehicular homicide case is its determination that the defendant had the power to prevent the victim's death by driving lawfully instead of recklessly or while intoxicated. Here, for instance, the State presented evidence that if Defendant had not been intoxicated or driving recklessly, he would have applied his brakes or otherwise

been able to avoid ramming the victim's car. Under such circumstances, it is proper and just to hold the defendant criminally responsible for the consequences of his or her unlawful behavior. In this respect, we agree with those courts and commentators that have observed that causation in a criminal case is generally, though not always, less complicated than in a tort case. *See People v. Stewart,* 40 N.Y.2d 692, 389 N.Y.S.2d 804, 358 N.E.2d 487, 491 (N.Y.1976); Jerome Hall, *General Principles of Criminal Law* 254–57 (2d ed.1960).

{23} Finally, while Defendant is correct that *Simpson* did not involve UJI 14–252, we agree with the Court of Appeals' conclusion that the rationale in *Simpson* is controlling. As we have discussed, the rationale of *Simpson* is simply that there must be a significant link between the victim's death and the defendant's act of reckless driving or driving while intoxicated. *See* 116 N.M. at 772, 867 P.2d at 1154, *see also State v. Landgraf,* 1996–NMCA–024, ¶ 31, 121 N.M. 445, 913 P.2d 252 (proximate cause required for vehicular homicide conviction). UJI 14–252, given together with UJI 14–251, merely provides that if that link is not broken by some intervening event—in this case the victim's alleged negligence—the defendant should not escape criminal responsibility for his actions.

*CONCLUSION*

{24} The phrase "if you find" in UJI 14–252 does not shift the burden of proof to Defendant's shoulders. Although UJI 14–252 must be rewritten to instruct the jury on foreseeability, the absence of such language in this case was harmless error. UJI 14–252 need not instruct the jury on a higher standard of causation than that articulated in UJI 14–251. Defendant's convictions are affirmed.

{25} **IT IS SO ORDERED.**

BACA, MINZNER, SERNA and McKINNON, JJ., concur.

