This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.                                      **NO. 27,291**

**MARIO TRUJILLO,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MORA COUNTY**
**Eugenio S. Mathis, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Max Shepherd, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

     Mario Trujillo (Defendant) appeals his convictions of one count of abuse of a

child resulting in death in violation of NMSA 1978, Section 30-6-1(D) (2004) (prior to amendments through 2009), four counts of homicide by vehicle in violation of NMSA 1978, Section 66-8-101 (2004), one felony count of driving while intoxicated in violation of NMSA 1978, Section 66-8-102 (2004) (prior to amendments through 2008), one count of driving while license is suspended or revoked in violation of NMSA 1978, Section 66-5-39 (1993), one count of driving without proper restraints in violation of NMSA 1978, Section 66-7-372 (2001), one count of driving with a child not properly restrained in a vehicle in violation of NMSA 1978, Section 66-7-369 (2001) (amended 2005), and one count of driving without mandatory insurance in violation of NMSA 1978, Section 66-5-205(B) (1998). Defendant raises six issues on appeal: (1) whether the district court erred in the denial of requested jury instructions regarding causation; (2) whether the district court deprived him of a fair trial by granting the State's motion to exclude certain lay witness testimony and expert witness testimony; (3) whether the district court erred in finding sufficient evidence to support the designation of a serious violent offense pursuant to the earned meritorious deductions statute, NMSA 1978, Section 33-2-34 (2006); (4) whether the district court erred in the admission of certain photographs and denying certain rebuttal evidence; (5) whether the district court erred in denying the motion for mistrial; and (6) whether the district court erred in denying the motion to dismiss the charge of driving with a suspended or revoked license. We reverse and remand for

a new trial on all four counts of homicide by vehicle and on the single count of abuse of a child resulting in death. We conclude that the district court erred when it failed to give Defendant's requested jury instructions regarding causation. We affirm Defendant's convictions for driving while intoxicated, driving while license is suspended or revoked, driving without proper restraints, and driving with a child not properly restrained in a vehicle.

**FACTS AND PROCEDURES**

On July 3, 2004, at approximately 10:00 a.m., Defendant was involved in a motor vehicle rollover accident while driving southbound on the I-25 frontage roadway between Wagon Mound and Watrous, New Mexico (the frontage roadway). The accident occurred on a clear day in a location where the frontage roadway turned slightly to the left. Defendant was driving his personal truck, and five additional passengers were in the vehicle at the time of the accident. Defendant was the only occupant who survived the accident. No other vehicles were involved in the accident. Although there was evidence that one occupant was wearing a seat belt, there was no evidence that any of the other occupants were wearing seat belts. Several of the passengers were ejected from Defendant's truck.

In May 2004, approximately six weeks prior to the accident, the New Mexico Department of Transportation applied a "chip-seal" process to the frontage roadway between Wagon Mound and Watrous. Chip sealing involves a process of spreading

3

tacky oil on the top of the roadway, followed by spreading small rock chips and compacting the chips into the oil with rollers. The loose chips are then swept away, with many chips scattering and collecting on the shoulder of the roadway. When the chip-sealing process is complete, the center-line striping and solid-line striping along the edge of the roadway are covered and no longer visible to drivers. At the time of Defendant's accident, the Department had not repainted the center-line striping and solid-line striping along the edge of the frontage roadway in the relevant section where the accident occurred. The shoulder of the frontage roadway consisted of dirt. The chip-sealing process raises the pavement portion of the roadway above the dirt shoulder by approximately one-half inch. At the location of Defendant's accident, the height of the drop off between the roadway and dirt shoulder was between less than one inch and three inches.

        Approximately four to five weeks prior to Defendant's accident, State Representative Hector Balderas was involved in a single-car accident while coming onto the northbound frontage road of I-25 immediately from an underpass location and entering a slanted/banked loop. The speed limit at the location of the Balderas accident was between twenty-five and thirty-five miles per hour. The location of the Balderas accident was approximately five to six miles away from Defendant's accident location. The frontage roadway in the location of the Balderas accident had recently been chip sealed, and the highway striping had not been repainted.

Expert witnesses testified about the cause of Defendant's accident. It is undisputed that two of Defendant's truck tires left the pavement on the right side of the frontage roadway, corrected while on the dirt shoulder, and attempted to re-enter the roadway before rolling over and coming to rest on the right shoulder. Law enforcement officers arrived at the scene approximately fifteen minutes after the accident and conducted an investigation. Defendant was taken to the hospital where a blood alcohol test was conducted at approximately 11:20 a.m., yielding a blood alcohol concentration (BAC) of fourteen one-hundredths (.14). Breath alcohol tests were also conducted at approximately 1:50 p.m. and 1:53 p.m., yielding a breath alcohol concentration (BrAC) of ten one-hundredths (.10) and nine one-hundredths (.09) respectively.

Defendant disputed the cause of the accident, while the State argued that the only cause of the accident was Defendant's driving while under the influence of alcohol. In support of his theory, Defendant presented expert testimony, including an accident reconstructionist who testified, among other things, that the pavement edge drop "may have contributed to [the] accident." Defendant later requested a jury instruction on proximate cause based on UJI 14-251 NMRA. The district court agreed with the State's position and denied Defendant's requested instruction on proximate causation. A jury ultimately convicted Defendant on all counts, and this appeal followed.

# DISCUSSION

**The District Court Committed Reversible Error in Refusing UJI 14-251**

We must decide whether the district court erred in denying Defendant's requested instruction defining causation, UJI 14-251. The propriety of jury instructions given or denied is a mixed question of law and fact that we review de novo. *State v. Munoz*, 1998-NMSC-041, ¶ 8, 126 N.M. 371, 970 P.2d 143. On review, we "view the evidence in the light most favorable to the giving of the requested instruction." *State v. Hill*, 2001-NMCA-094, ¶ 5, 131 N.M. 195, 34 P.3d 139.

Defendant requested the following instruction defining causation in accordance with UJI 14-251:

> In addition to the other elements of the crime of homicide by vehicle . . . the state must also prove to your satisfaction beyond a reasonable doubt that:
>
> 1. The death was a foreseeable result of the defendant's act;
>
> 2. The act of the defendant was a significant cause of the death of [victims]. The defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred.
>
> 3. This happened in New Mexico, on or about the [t]hird day of July, 2004.

Use Note 8 to UJI 14-240 NMRA for vehicular homicide states that "[i]f causation is

in issue, Instruction 14-251, the definition of causation, *must* also be used." (Emphasis added.) Use Note 1 to UJI 14-251 is consistent with UJI 14-240 and states that UJI 14-251 is to be used "only if causation is in issue." The State had the burden to prove that Defendant caused the fatal accident. *See* § 66-8-101 (stating that the state has to prove a causal relationship between the defendant's unlawful blood alcohol content and the fatal collision in a vehicular homicide case); *Munoz*, 1998-NMSC-041, ¶¶ 15-16 (discussing the state's burden of proving that the accused caused the death in a vehicular homicide case). The question before us is whether Defendant challenged the State's causation theory with sufficient evidence to make causation an "issue."

The State argued at trial that Defendant's intoxication was the sole cause of the accident and that the evidence did not support the proximate cause instruction. Defendant's theory of the case was that he was not impaired at the time of the accident and that there were other causes of the accident. He presented evidence to support his theory. Witnesses testified that his truck was having mechanical problems during the days before the accident and that there was loose gravel and no striping on the road on the day of the accident. Evidence also demonstrated that on the day of the accident, there was a pavement edge drop between an inch or less and three inches due to chip sealing of the roadway. Defendant's expert testified that the edge drop may have contributed to the accident. The expert based his opinion on information he

7

received from the police investigation, from research and studies, and from the way the truck behaved when it traveled off and back onto the roadway. While the State challenges the credibility of Defendant's evidence, credibility is for the jury. *Poore v. State*, 94 N.M. 172, 173-74, 608 P.2d 148, 149-50 (1980).

Defendant also presented evidence regarding his history of drinking alcohol and his blood alcohol content in an attempt to demonstrate that he was not impaired by alcohol at the time of the accident. Defendant's co-worker testified that Defendant often had multiple beers during the evening and was not impaired during work the following day. His retrograde extrapolation expert testified that Defendant's blood alcohol content may have been less than .08 at the time of the accident. Defendant's friend and the nurse who treated Defendant testified that he did not appear drunk after the accident.

Whether Defendant's intoxication or something else caused the truck to swerve off the road and eventually roll was the subject of hours of testimony. Based on the parties' conflicting arguments about the cause of the accident, causation was clearly "in issue." Because the cause of the accident was in dispute, the definition of causation was important to Defendant's defense theory and to help the jury fully understand the State's burden of proof. *See Poore*, 94 N.M. at 175, 608 P.2d at 151 ("[A] defendant is still entitled to an instruction which sets forth his theory of the case if there is supportive evidence."). Viewing the evidence in the light most favorable

8

to giving the instruction, the district court should have given UJI 14-251. The district court's refusal to give the causation definition prejudiced Defendant because the jury was not instructed on the definition of causation, and Defendant was not allowed to challenge the State's theory of causation. The district court committed reversible error. *See State v. Jernigan*, 2006-NMSC-003, ¶¶ 20, 25, 139 N.M. 1, 127 P.3d 537 (filed 2005) (reversing the defendant's conviction because he presented sufficient evidence to support the giving of the definition of "provocation" as required by the use note); *State v. Barber*, 2004-NMSC-019, ¶¶ 9-12, 135 N.M. 621, 92 P.3d 633 (stating that if the defendant had requested the jury instruction definition mandated by the use note, "it would have been reversible error for the court to deny him"); *see also Poore*, 94 N.M. at 174-75, 608 P.2d at 150-51 (finding reversible error after the district court refused to give the causation instruction in a vehicular homicide case because "[i]f under any reasonable hypothesis the instruction could have been of any benefit to the defendant when considered by a jury of lay persons, then [the] defendant was harmed and prejudiced by the refusal to give it").

For the foregoing reasons, we reverse and remand for a new trial on Defendant's convictions of homicide by vehicle and abuse of a child resulting in death. Consequently, we reverse and remand the district court's determination that the conviction for child abuse resulting in death was a serious violent offense. We do not address Defendant's remaining arguments regarding the five counts that are

reversed herein. We now review Defendant's other issues on appeal as they pertain to his remaining convictions.

**The District Court Did Not Err in Admitting Photographs**

Defendant argues that the district court erred in allowing photographs of the scene of the accident into evidence because the photographs were highly prejudicial and cumulative. The district court has discretion when deciding whether to allow photographs into evidence, and we review the court's evidentiary decision for an abuse of discretion. *State v. Pettigrew*, 116 N.M. 135, 139, 860 P.2d 777, 781 (Ct. App. 1993).

Relevant evidence is admissible as long as the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. Rules 11-402, 11-403 NMRA. Defendant objected to the admission of nine photographs. Of those photographs, the State withdrew four after the district court made the State choose between photographs depicting the same information. The court then heard argument from both counsel regarding the remaining five photographs. The district court was concerned about the probative value of the photographs. The prosecutor explained that one of the photographs showed the position of the seat belt with regard to one of the victims. Defense counsel admitted that during pretrial interviews, he had considered arguing that if the victims had been wearing seat belts, they would not have died, and he also admitted that questions regarding seat belt use had come up.

The district court ultimately admitted the photographs into evidence, stating, "If we're going to go along those lines, . . . these photographs are probative, then, of something that the jury might consider or something that [might] be raised[.]"

The photographs were relevant because they depicted the scene of the accident, including the location of the wreck, the condition of the road and the truck, and the bodies. The record is clear that the court balanced the probative and prejudicial value of the photographs before admitting them into evidence. The court required the State to withdraw several of the photographs depicting cumulative information. A rational analysis of the competing interests was reflected in the record. Given the relevance of the remaining photographs in depicting the scene of the accident and in rebutting Defendant's arguments, we conclude the district court did not abuse its discretion in admitting the disputed photographs. *See, e.g.*, *State v. Mora*, 1997-NMSC-060, ¶¶ 52, 55, 124 N.M. 346, 950 P.2d 789 (holding the district court did not abuse its discretion in admitting photographs of an abused child); *Pettigrew*, 116 N.M. at 139, 860 P.2d at 781 (stating that this court is unaware of a case where a conviction has been reversed because allegedly inflammatory photographs were admitted inappropriately into evidence).

**The District Court Did Not Err in Denying Defendant's Motion for a Mistrial**

Defendant argues that the district court erred by denying his motion for a mistrial after Officer Hinders mentioned Defendant's prior DWI convictions. We

review the denial of a motion for mistrial for an abuse of discretion. *State v. Lucero*, 1999-NMCA-102, ¶ 32, 127 N.M. 672, 986 P.2d 468. The court abuses its discretion "when the decision is clearly against the logic and effect of the facts and circumstances before the court." *Id.* (internal quotation marks and citation omitted).

Rule 11-404(B) NMRA prohibits "[e]vidence of other crimes, wrongs or acts . . . to prove the character of a person in order to show action in conformity therewith." Prior to trial, the district court prohibited the State's witnesses from mentioning Defendant's prior DWI convictions. During direct examination, Officer Hinders stated, "[Sergeant Martin] questioned [Defendant] on if he had drank that morning and the nature of the accident, prior DWI convictions and . . . that was basically it. [Sergeant] Martin did raise the issue a few times whether [Defendant] . . . thought that he had a drinking problem[.]" During a break in testimony, Defendant asked for a mistrial based on Officer Hinders' comments. The district court denied the motion, stating, "There was no specific mention that . . . Defendant had prior convictions. The comment was during the course of the paperwork he was searching the driving history and searching for prior DWIs. I don't think this officer actually said that . . . Defendant had prior convictions for DWI." The court also declined to give a curative instruction on the matter for fear of alerting the jury to the issue, and Defendant agreed with the court's decision. The court then reminded counsel that witnesses were not to mention Defendant's prior DWI convictions or a

12

mistrial could result.

We are not convinced after reviewing the testimony that Officer Hinders actually stated that Defendant had prior DWI convictions. Officer Hinders states only that Sergeant Martin was investigating whether Defendant had prior DWI convictions, not that Defendant did in fact have prior DWI convictions. The comment was at most an indirect reference to any possible prior convictions. Without more, the comment did not require the severe sanction of a mistrial, and the district court did not abuse its discretion in denying Defendant's motion.

Even if we were to characterize Officer Hinders' testimony as a violation of Rule 11-404(B), we conclude the error was harmless. *See Sanchez v. State*, 103 N.M. 25, 27, 702 P.2d 345, 347 (1985) (stating the test for harmless error). As part of his defense, Defendant presented direct testimony that he was a heavy drinker who could tolerate a substantial amount of alcohol. In addition, there were BAC and BrAC results demonstrating that Defendant had been drinking on the morning of the accident. Furthermore, the State claimed that it was not trying to elicit information about Defendant's prior convictions and that the comment was not intentional. *See State v. Simonson*, 100 N.M. 297, 300-01, 669 P.2d 1092, 1095-96 (1983) (affirming the district court's denial of the defendant's motion for a mistrial after the court sustained the objection to testimony not elicited by the prosecutor and gave a curative instruction). Given the amount of evidence that Defendant was a heavy drinker, the

inadvertent comment about possible prior DWI convictions was not overly prejudicial. *See State v. Christmas*, 2002-NMCA-020, ¶ 16, 131 N.M. 591, 40 P.3d 1035 (filed 2001) (holding that an officer's improper comment about an HGN test resulted in harmless error because there was other overwhelming evidence probative of the defendant's intoxication).

**The District Court Properly Denied Defendant's Motion to Dismiss and Motion for a Directed Verdict**

Defendant argues that the district court erred in denying his motion to dismiss and motion for a directed verdict for the charge of driving with a suspended or revoked license. Although Defendant's argument is somewhat unclear, it appears Defendant is contending that the district court erred because Defendant's due process rights were violated when the State failed to prove that it had mailed Defendant notice of his license revocation. To the extent that Defendant claims a due process violation, he did not preserve this argument. We decline to address arguments not preserved on appeal. *See State v. Lucero*, 104 N.M. 587, 590, 725 P.2d 266, 269 (Ct. App. 1986) ("It is well-settled that objections must be raised below to preserve an issue for appellate review.").

To the extent Defendant claims that there was insufficient evidence to prove that he knew his license was suspended or revoked as required under Section 66-5-39, we disagree. *See State v. Castro*, 2002-NMCA-093, ¶¶ 3, 6-8, 132 N.M. 646, 53 P.3d 413 (requiring that the state prove the defendant knew her license was revoked in

14

order to sustain a conviction under Section 66-5-39). Sergeant Martin testified for the State and stated that Defendant told him that his license was suspended. Defense counsel later admitted that Defendant stated he knew his license was suspended. This evidence is sufficient to prove that Defendant knew his license was suspended or revoked. The district court did not err in denying Defendant's motions regarding the charge of driving with a suspended or revoked license. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (affirming the district court's denial of the defendant's motion for a directed verdict when substantial evidence supported the jury verdict of guilty).

**CONCLUSION**

The district court erred in refusing to give UJI 14-251. As a result, we reverse Defendant's conviction for four counts of homicide by vehicle and one count of child abuse resulting in death, and we remand for a new trial on these counts. We also reverse the district court's determination that the conviction for child abuse resulting in death was a serious violent offense and remand for consideration only after the completion of a new trial on the charge of child abuse resulting in death. We affirm Defendant's remaining convictions for driving while intoxicated, driving while license is suspended or revoked, driving without proper restraints, driving with a child not properly restrained in a vehicle, and driving without mandatory insurance.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**