This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO.   30,706**

**CALVIN DEE FINCH,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**William C. Birdsall, District Judge**

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

To obtain a conviction for homicide by vehicle while driving under the influence of intoxicating liquor, the State must prove two things: That the defendant operated a vehicle while intoxicated and that *intoxication* was both the "but for" and a significant cause of the death of another. The associated uniform jury instruction states that the jury must find that "the defendant operated a motor vehicle while under the influence of intoxicating liquor" and that "the defendant *thereby caused* the death of [victim]." Is this sufficient to convey to the jury the required causal analysis when Defendant has presented evidence challenging whether intoxication was the cause of the accident? We determine that it is not, and that the district court's failure to give an instruction on causation was fundamental error. We therefore reverse Defendant's conviction of homicide by vehicle while driving under the influence of intoxicating liquor and remand for a new trial.

**BACKGROUND**

On the afternoon of July 4, 2009, Calvin Finch (Defendant) was test-driving for possible purchase a truck owned by Craig Stahle, who was in the passenger seat. The truck windows were tinted darker than factory level but within legal limits. On the way back to his girlfriend's house, Defendant entered a turn lane to make a left turn. After waiting for an oncoming car to turn right, Defendant turned left, crossing the lane. As he was in the intersection, an oncoming motorcycle hit the side of the truck

near the rear. The driver of the motorcycle, Harry Irvin (Victim), died at the scene.

Defendant submitted to field sobriety tests administered by officers who arrived at the scene in response to Mr. Stahle's call to 911. The tests did not indicate impairment due to alcohol. Defendant testified that he told the officers he had last consumed alcohol at 3 a.m. that morning. Several officers testified that they smelled or thought they smelled a slight odor of alcohol on Defendant, while others testified they did not. Since Defendant passed the field sobriety tests, the officers did not arrest him. Defendant agreed, however, to have his blood tested for alcohol and elected to have his girlfriend drive him to the hospital rather than ride with an officer. Defendant testified that he and his girlfriend went first to her house a quarter mile away so she could get her driver's license and change clothes. He was unobserved by law enforcement for approximately twenty minutes. According to his testimony, while at his girlfriend's house, Defendant took several drinks of peppermint schnapps. He and his girlfriend returned to the scene of the accident and followed a deputy to the hospital where blood was drawn with Defendant's consent, approximately two and one-half hours after the accident. The blood test results showed a blood alcohol content of .13.

At trial, defense counsel accepted the jury instructions proposed by the State with one exception, that is not related to this appeal. Defendant was convicted by a jury of homicide by vehicle while driving under the influence of intoxicating liquor, contrary to NMSA 1978, Section 66-8-101(A) (2004), and improper turning at an intersection, contrary to NMSA 1978, Section 66-7-322 (1978). He also pled guilty to driving while license suspended or revoked, contrary to NMSA 1978, Section 66-5-39(A) (1993). He was sentenced to twenty-two years in the custody of the New Mexico Department of Corrections. He was also sentenced to three years, to run consecutively, for separate charges of driving while under the influence of intoxicating liquor and driving while license suspended or revoked. The total term of imprisonment was twenty-five years.

Defendant appeals his convictions on a number of bases, including the district court's failure to instruct on proximate cause, ineffective assistance of counsel, insufficient evidence of impairment, and prosecutor misconduct. He also challenges the district court's conclusion that his conviction for vehicular homicide was a serious violent offense.

**DISCUSSION**

We begin with Defendant's first argument. No instruction on causation was requested at trial. Thus, the issue was not preserved, and we review it for fundamental

4

error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134; *see* Rule 12-216(B)(2) NMRA. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "[N]ot all questions of fundamental error turn solely on guilt or innocence" of the defendant, however, *id.* ¶ 14, as in some circumstances our focus is directed "more on process and the underlying integrity of our judicial system." *Id.* ¶ 16. Accurate instruction of the jury can be vital to the integrity of a verdict. *State v. Mascareñas*, 2000-NMSC-017, ¶ 21, 129 N.M. 230, 4 P.3d 1221. "[T]he failure to instruct the jury on the essential elements of an offense constitutes fundamental error[,]" *State v. Osborne*, 111 N.M. 654, 662, 808 P.2d 624, 632 (1991), except when "there can be no dispute that the element was established." *State v. Orosco*, 113 N.M. 780, 784, 833 P.2d 1146, 1150 (1992).

Finally, if the element not instructed on was essential to the jury's verdict and, therefore, "the jury could not have reached its verdict without also finding the element omitted from the instructions[,]" the omission is not fundamental error. *Barber*, 2004-NMSC-019, ¶ 29. The converse is also true. If the jury's verdict rests on grounds *not* including an essential element, there is fundamental error. *See Mascareñas*, 2000-NMSC-017, ¶ 21. The Court must look at the jury instructions and the totality of

circumstances of the case in order to determine whether either is the case. *Barber*, 2004-NMSC-019, ¶ 19.

Defendant argues that it was fundamental error for the district court to not instruct the jury on the definition of causation because "even if the jury found that he *was* intoxicated while driving, there was . . . evidence that . . . permits a reasonable inference that . . . any possible intoxication did not result in reckless driving." He maintains that the evidence supports a finding that Defendant was driving carefully and "[t]he strength of the impact was therefore dependent upon the speed of the motorcycle." The State maintains that Defendant has failed to meet the fundamental error standard, which, it argues, "only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience."

Defendant argues that the jury should have been given Uniform Jury Instruction (UJI) 14-251 NMRA. UJI 14-251 requires that the State prove "beyond a reasonable doubt that . . . [t]he death was a foreseeable result of the defendant's act" and that

> [t]he act of the defendant was a significant cause of the death of [the v]ictim. The defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred.

The fundamental error analysis proceeds in two steps. We begin by "determin[ing] whether a reasonable juror would have been confused or misdirected

6

by the jury instruction." *Barber*, 2004-NMSC-019, ¶ 19.  If so, we "review the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the [d]efendant's conviction was the result of a plain miscarriage of justice."  *Id.* (internal quotation marks and citation omitted).

**A.      Defendant was Entitled to UJI 14-251**

To prove homicide by vehicle while driving under the influence of alcohol, the State must demonstrate that intoxication was a cause of Victim's death.  Section 66-8-101; UJI 14-240 NMRA; *State v. Munoz*, 1998-NMSC-041, ¶ 13, 126 N.M. 371, 970 P.2d 143 ("[T]he [s]tate had to make a causal connection between [the d]efendant's actions and the fatal collision or else [the d]efendant was to be acquitted."); *see State v. Sisneros*, 42 N.M. 500, 505, 82 P.2d 274, 277 (1938) (discussing the precursor to the current vehicular homicide statute and stating, "If the defendant killed [victim] while committing the unlawful act of driving an automobile while under the influence of intoxicating liquor, he is not guilty of manslaughter unless the commission of that unlawful act was the proximate cause of the death of [victim].").  This is because "[t]he purpose of the vehicular homicide statute is . . . to punish reckless driving or impaired driving when such conduct results in death or great bodily injury."  *Munoz*, 1998-NMSC-041, ¶ 20; see § 66-8-101(C).  UJI 14-251 addresses this causal

7

connection by "incorporat[ing] concepts of both proximate cause and factual causation." *State v. Augustin M.*, 2003-NMCA-065, ¶ 53, 133 N.M. 636, 68 P.3d 182.

A defendant is not entitled to an instruction on the definition of causation simply because causation is an element of the charge. Rather, UJI 14-251 must be given to the jury if Defendant raises a question as to the causal connection between his actions and the death of Victim. *See* UJI 14-240 Use Note 8 ("If causation is in issue, [UJI] 14-251, the definition of causation, must be given."); UJI 14-251 Use Note 1 ("For use only if causation is in issue."); *State v. White*, 118 N.M. 225, 229, 880 P.2d 322, 326 (Ct. App. 1994). Thus, our inquiry is whether Defendant challenged the State's implicit assertion that intoxication caused the accident so as to put causation "in issue." We review the record for evidence in favor of the giving of the instruction. *Poore v. State*, 94 N.M. 172, 174, 608 P.2d 148, 150 (1980) ("[T]he defendant [should] be accorded some semblance of liberality in having the jury instructed with particularity as to his defenses that are supported by the evidence.").

Defendant argues that the evidence at trial supported the giving of UJI 14-251. This evidence included Defendant's testimony that he did not drink before driving; officer testimony that Defendant had passed the field sobriety tests, and that the

8

officer administering them did not believe he was intoxicated; undisputed testimony that the windows were tinted; Defendant's testimony that the window tint limited visibility; Defendant's undisputed testimony that he waited for an oncoming car to turn before beginning his left turn; and the passenger's testimony that he did not see the motorcycle. Defendant also points out that the officer reconstructing the accident did not calculate the speed of the motorcycle, apparently to imply that the speed of the motorcycle itself could have been a cause of the accident. We agree that this evidence was sufficient to put in question the causal link between intoxication and the accident. *See Munoz,* 1998-NMSC-041, ¶ 13.

Having established that there is evidence sufficient to put causation in issue, we turn to whether the jury instructions as given could have misdirected the jury. The crux of this analysis is whether juror confusion led to a verdict not based on the correct law. *Barber*, 2004-NMSC-019, ¶ 21 (stating that when there is ambiguity in an instruction, "[the] ambiguity casts uncertainty over whether the state truly proved [an] element of [the crime] beyond a reasonable doubt"). Defendant argues that the jury could have convicted Defendant because he was driving while intoxicated and was the "but for" cause of the accident, without also finding that the *intoxication*, rather than negligence or even error by the motorcyclist, caused the accident. He contends that this conclusion is contrary to the vehicular homicide statute, which, as

9

discussed, requires that the intoxication itself be the cause of the accident. We agree. "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12.

The State points out correctly that the elements instruction for homicide by vehicle requires the jury to find that Defendant both drove while intoxicated and "thereby caused" the death of Victim. *See* UJI 14-240. This instruction, however, is inadequate to convey the required causation analysis. Since jurors are not trained in legal concepts or definitions, when a jury instruction contains a legal term or concept such as "causation," it is especially important to provide guidance. *See* Nancy S. Marder, *Bringing Jury Instructions into the Twenty-First Century*, 81 Notre Dame L. Rev. 449, 457 (2006) (discussing problems with jury instructions and difficulties jurors have with understanding legal concepts, including proximate cause). Here, proper conviction depended on a jury finding that "but for" Defendant's intoxication the death would not have occurred *and* that Defendant's alleged intoxication was a significant cause of Victim's death. *See State v. Montoya*, 2003-NMSC-004, ¶ 11, 133 N.M. 84, 61 P.3d 793 ("UJI 14-251 . . . instructs the jury not to convict the defendant if he is only at fault to an insignificant extent. [It also] incorporates the notion of factual causation, which . . . asks whether the result would have happened

10

when and as it did 'but for' the defendant's act." (internal quotation marks and citation omitted)). The much simpler language in UJI 14-240—"thereby caused"—does not encompass this two-pronged analysis.

We conclude that, without additional instruction on the causation requirements, the jury could have been misdirected by the elements instruction. Had UJI 14-251 been requested, it would have been reversible error to deny the request. *See Barber*, 2004-NMSC-019, ¶ 12.

**B.      Failure to Instruct on Causation was Fundamental Error**

Having found that it would have been reversible error not to define "cause" for the jury, we proceed to the second step of a fundamental error analysis and examine "the entire record, placing the jury instructions in the context of the individual facts and circumstances of the case, to determine whether the Defendant's conviction was the result of a plain miscarriage of justice." *Id.* ¶ 19 (internal quotation marks and citation omitted). The State argues that the failure to give UJI 14-251 does not rise to fundamental error. Although it does not direct us to them, the State appears to rely in part on cases holding that failure to give "definitional" instructions is not fundamental error. *See, e.g., Barber*, 2004-NMSC-019, ¶¶ 20-21 (stating the "general rule" that "a missing definition cannot result in the sort of 'fundamental unfairness' that undermines the integrity of the judicial system"); *State v. Stephens*, 93 N.M. 458,

11

462, 601 P.2d 428, 432 (1979) ("[T]he failure to instruct the jury on the definition or the amplification of the elements does not constitute error."), *overruled on other grounds by State v. Contreras*, 120 N.M. 486, 903 P.2d 228 (1995). Lack of a definitional instruction, however, may "be of central importance to a fair trial [when] . . . the instruction provided a determination critical to understanding the elements instruction." *Barber*, 2004-NMSC-019, ¶ 25. When this is the case, failure to provide a definitional instruction may be fundamental error.

In *Mascareñas*, the defendant was convicted of child abuse resulting in death and appealed on grounds that the jury was improperly instructed on "the requisite culpable mental state for criminal negligence." 2000-NMSC-017, ¶ 8. The elements instruction stated, "to find that [the defendant] *negligently* caused child abuse to occur, you must find that [the defendant] *knew or should have known* of the danger involved in forcefully shaking [victim] and *acted with reckless disregard* for the safety or health of [victim]." *Id.* ¶ 8; UJI 14-602 NMRA. The defendant argued that the highlighted language confused criminal and civil negligence and "create[d] the distinct possibility that the jury understood the applicable negligence standard to criminalize 'careless' conduct or perhaps only 'extremely careless' conduct." *Mascareñas*, 2000-NMSC-017, ¶ 8 (internal quotation marks and citation omitted). The Court agreed that failure to instruct on the correct standard was reversible error.

*Id.* ¶ 16. Since the defendant had not requested an instruction, the Court proceeded to a fundamental error analysis of the jury instructions as a whole and the evidence adduced at trial to determine whether the lack of the correct instruction "implicate[d] a fundamental unfairness that would undermine judicial integrity if left unchecked." *Id.* ¶ 17 (alteration, internal quotation marks and citation omitted). The Court rejected the State's argument that an instruction on the definition of criminal negligence was not fundamental error because it was merely "definition or the amplification of the elements of an offense" and not an essential element. *Id.* ¶ 18 (emphasis omitted). Instead, it held that "the standard necessary to sustain a conviction is, under these facts, a critical determination . . . akin to a missing elements instruction." *Id.* ¶ 20 (internal quotation marks and citation omitted). It concluded that "[t]o allow [the defendant's] conviction to stand when there is a distinct possibility that he was convicted under [the incorrect] standard would result in a miscarriage of justice and . . . fundamental error occurred." *Id.* ¶ 21.

The Court reached the opposite conclusion in *Barber*. There, the defendant appealed his conviction for possession with intent to distribute methamphetamine. 2004-NMSC-019, ¶ 1. At trial, he maintained that the methamphetamine found in his hotel room was not his. *Id.* ¶ 6. The jury was instructed on the essential elements of the charges, including that "[t]he defendant had [m]ethamphetamine in his

13

possession[,]" *id.* ¶ 7, but no legal definition of "possession" was given. *Id.*; see UJI 14-130 NMRA ("A person is in possession of [a substance] when . . . he knows what it is, he know it is . . . in his presence and he exercises control over it."). The Court concluded that failure to give the instruction would have been reversible error because the issue of possession was challenged, *Barber*, 2004-NMSC-019, ¶ 12, and then considered whether the lack of a definition resulted in "such confusion that the jury could have convicted [the d]efendant based upon a deficient understanding of the legal meaning of possession as an essential element of the crime." *Id.* ¶ 25. A review of the evidence revealed that it did not. "Even though the jury was not instructed that it must find [the d]efendant had both knowledge and control over the drugs, no distinct possibility exists . . . that the jury convicted [the d]efendant without finding all the elements beyond a reasonable doubt." *Id.* ¶ 26. This is because "the jury could not have found that [the d]efendant intended to transfer the methamphetamine in the bathroom without also finding that [the d]efendant was exercising some degree of control over the drugs." *Id.* ¶ 30.

The key difference between these two cases is whether there was evidence that the jury's conclusion was legally correct. *Barber* involved a multi-part charge: possession with intent to distribute methamphetamine. *Id.* ¶ 7. The fact that the jury found that the defendant intended to distribute methamphetamine was proof that the

14

jury in fact concluded that the defendant had control over the drugs when it concluded that he intended to distribute them. *Id.* ¶ 30. Thus, the Court held there was no fundamental error because the jury's decision was based on the proper legal basis. *See id.* ¶¶ 30-31. Our case is more like *Mascareñas*. Like that case, here there is a "distinct possibility" that the jury convicted Defendant without finding that intoxication was the cause of the accident and there is no jury finding that rests on a finding of causation as legally defined. 2000-NMSC-017, ¶ 13. There is no evidence, therefore, that the jury's conclusions were legally correct.

In addition, in the context of this case, the definition of "cause" rises to "a critical determination akin to a missing elements instruction." *Id.* ¶ 20. In *Mascareñas*, the defendant argued that he did not know that shaking a baby could cause injury. *Id.* ¶ 15. Because this was his defense, it was important for the jury to know the difference between the civil negligence (where defendant "knew or should have known of the danger involved in forcefully shaking [victim]") and criminal negligence (where defendant's "conduct [was] so reckless, wanton, and willful as to show an utter disregard for the safety of [others]") standards. *Id.* ¶¶ 8-9 (internal quotation marks omitted). Similarly, here, Defendant made two arguments: (1) he was not intoxicated at the time of the accident; and (2) even if he was intoxicated, the intoxication was not the cause of the accident. Under this theory of the case, the

definition of causation gains a "central importance" to the defense. The jury, therefore, should have been instructed on this issue so that they understood that they must find a causal link between the alleged intoxication and the death of Victim in order to convict.

The district court bears responsibility for instructing the jury on the correct law. Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."); *Territory v. Baca*, 11 N.M. 559, 563, 71 P. 460, 462 (1903) ("The court must clearly instruct the jury as to the law of the case."). "Where fundamental error is involved, it is irrelevant that the defendant was responsible for the error." *Osborne*, 111 N.M. at 662, 808 P.2d at 632. Thus, counsel's failure to request UJI 14-251 is of no consequence since under the facts of this case the instruction is necessary to a correct statement of the law. The district court should have instructed the jury on this issue even without a request to do so.

**CONCLUSION**

Since failure to instruct on causation was fundamental error, we remand for a new trial consistent with this Opinion. *State v. Clark*, 108 N.M. 288, 297, 772 P.2d 322, 331 (1989) ("[I]f fundamental error exists, a new trial will be ordered."),

Correction Page, State v. Finch, COA #30,706, BuWVz, Filed 10-30-12, Replace lines 1-2 with: 14-3130 NMRA ("A person is in possession of [a substance] when he knows it is . . . in his presence, and he exercises control over it.").

*overruled on other grounds by State v. Henderson*, 109 N.M. 655, 789 P.2d 603 (1990).  Therefore, we need not address Defendant's other arguments.

    **IT IS SO ORDERED.**

_____
                                    **MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**LINDA M. VANZI, Judge**