This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-35725**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MATTHEW SCOTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Christina P. Argyres, District Judge**

Hector H. Balderas, Attorney General
Maha Khoury, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Following a jury trial, Defendant Matthew Scott was convicted of two counts of child abuse by endangerment (no death or great bodily harm). On appeal, Defendant challenges (1) the sufficiency of the evidence presented to support the first count; (2) the jury instruction under which the jury found him guilty of the second count; and (3) the two convictions as violating his right to be free from double jeopardy.

**{2}** Agreeing with Defendant's double jeopardy argument, we remand to the district court with instructions to vacate Defendant's second conviction. We otherwise affirm.

**BACKGROUND**

**{3}** The following testimony was given at trial. At the time of the incidents leading to Defendant's convictions, S.M. was a fourteen-year-old girl who lived with her mother and older sister. On the night of February 28, 2010, at about 7:00 or 8:00 p.m., Defendant, who was then twenty years old, and S.M. were socializing at an acquaintance's apartment. At least two other males were also present. S.M. was "chugging" alcohol. She and Defendant started kissing. Defendant pushed her down on the couch, she told him she was a virgin, and he responded, "Not anymore." Around then, she lost consciousness; she never consented to having sex with Defendant. According to Defendant, he and S.M. had sex that night, but he did not make her do anything she did not want to do.

**{4}** Sometime later, Defendant had a friend give him and S.M., still unconscious, a ride back to her house. Once there, he laid S.M. in the driveway behind a car and about ten feet from the garage door. Defendant banged on the garage door and then hurriedly left with the friend. S.M.'s sister heard the banging. She and her mother started looking for S.M. in the house and outside, where it was raining heavily. Her sister found S.M. lying in the driveway, unresponsive, smelling of alcohol, and looking like she had been in a fight. She carried S.M. inside and called the police. Once inside the house, S.M. was throwing up and, though awake, was still incoherent and unable to stand.

**{5}** S.M. was taken in an ambulance to a hospital. While there, she continued vomiting. Her sister learned that S.M.'s bra and socks were missing and that she had bruises on her thighs. Hospital staff referred S.M. to a sexual assault nurse examiner (SANE), who examined her the next morning.

**{6}** The SANE found redness and swelling on S.M.'s cheek, abrasions on her back, broken capillaries on the roof of her mouth, bruises on both breasts, and injuries to her genitalia. The SANE collected DNA samples from various places on S.M.'s body and collected samples of S.M.'s urine and blood.

**{7}** Subsequent lab analysis revealed that sperm DNA collected from the vaginal, cervical, and labial swabs matched Defendant's DNA. The pubic comb sample contained the DNA of Defendant and at least one person other than S.M. DNA collected from the right and left breast swabs revealed the DNA of at least two people other than S.M. The urine sample, taken at 8:30 the morning after the incident, had an alcohol level of 0.13, the equivalent of a blood alcohol concentration of 0.096.

**{8}** A grand jury later indicted Defendant on one count of criminal sexual penetration, one count of criminal sexual contact of a minor, two counts of child abuse, one count of kidnapping, and one count of contributing to the delinquency of a minor. At a trial that ended on January 8, 2016, Defendant was acquitted of criminal sexual contact and

kidnapping. The jury was hung on the criminal sexual penetration charge, found Defendant not guilty of contributing to the delinquency of a minor, and found Defendant guilty of the two counts of child abuse. The two child abuse convictions are the subject of this appeal.

## DISCUSSION

### I.  The Evidence Is Sufficient to Support Defendant's First Child Abuse Conviction

**{9}**   Defendant contends that his conviction on the first count of child abuse is not supported by sufficient evidence. The jury found Defendant guilty on this count after being instructed in pertinent part, as follows.

> For you to find [Defendant] guilty of child abuse, as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. [Defendant] dropped [S.M.] off at her home;
>
> 2. By engaging in the conduct described in Paragraph 1, [Defendant] caused [S.M.] to be placed in a situation that endangered the life or health of [S.M.];
>
> 3. [Defendant] showed a reckless disregard without justification for the safety or health of [S.M.]. To find that [Defendant] showed a reckless disregard, you must find that [Defendant's] conduct was more than merely negligent or careless. Rather, you must find that [Defendant] caused a substantial and unjustifiable risk of serious harm to the safety or health of [S.M.]. A substantial and unjustifiable risk is one that any law-abiding person would recognize under similar circumstances and that would cause any law-abiding person to behave differently than [Defendant] out of concern for the safety or health of [S.M.].

Defendant does not challenge the validity of this instruction.

**{10}**   Before addressing Defendant's specific contentions, we consider the principles guiding our review of this issue. Our affirmance hinges on "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). In making our determination, we "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of

the verdict[,]" *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176, and "disregard all evidence and inferences to the contrary[,]" *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. We lastly note that "[j]ury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883.

**{11}** Applying these principles, we dismiss some of Defendant's arguments. Among them, Defendant submits that his actions, "while maybe not a model of responsibility, were intended to alert [S.M.'s] family and help [S.M.] receive care[.]" Specifically, Defendant argues that his banging on the garage door was to ensure that "someone would promptly come get [S.M.]." We disregard the inference that Defendant's actions made S.M. safer, *see Rojo*, 1999-NMSC-001, ¶ 19, and otherwise dismiss this argument because the instruction did not require the jury to evaluate Defendant's guilt based on his intent. *See Smith*, 1986-NMCA-089, ¶ 7. Likewise, the instruction did not require a finding that S.M. suffered injury, so Defendant's argument that S.M. "suffered no injuries from being left outside" is not relevant to our review and therefore without merit. *See id.*

**{12}** Instead, the instruction directed the jury to find guilt if it found that, by dropping S.M. off at her home, Defendant placed S.M. in a situation that endangered her life or health and that Defendant showed a reckless disregard without justification for S.M.'s safety or health. The jury further had to find that Defendant's reckless disregard amounted to more than negligence or carelessness, but rather created a substantial and unjustifiable risk—that is, a risk that any law-abiding person would recognize under similar circumstances and that would cause the person to behave differently than Defendant did out of concern for S.M.'s safety or health. The jury heard evidence that when Defendant dropped S.M. off, S.M. was intoxicated and unconscious and it was raining heavily. It heard Defendant say that, because his friend, the driver, was in a hurry to leave, Defendant "just laid her down in front of the garage, banged on the garage door and took off."

**{13}** Although the jury also heard evidence that S.M.'s sister heard the banging and soon discovered S.M. lying in the driveway, the jury could reasonably infer that Defendant acted recklessly in what he failed to do: that is, in failing to take S.M. to the door and wait for an answer, or to wait to ensure that someone came to the driveway to care for S.M. In other words, the jury could reasonably conclude that Defendant endangered S.M.'s health and safety by leaving her unconscious and alone, outside at night, without knowing whether her condition was or would become serious, how long she would be left in that state, or what might happen to her as a result of those circumstances. It could reasonably conclude that his friend's hurry was not justification to do this. Further, the jury could reasonably conclude that a law-abiding person would both recognize the risks of leaving S.M. under those circumstances—having excessively consumed alcohol, placed behind a parked vehicle, and in inclement weather—and also behave differently than Defendant did. Overall, when viewing the evidence in the light most favorable to a guilty verdict, *Cunningham*, 2000-NMSC-009, ¶ 26, we conclude that there was sufficient evidence for the jury to find that, through his

actions and inactions, Defendant recklessly disregarded S.M.'s safety or health without justification. We therefore affirm his conviction on the first count of child abuse.

## II. The Jury Instruction Associated With the Second Count of Child Abuse Was Improper Because It Created the Possibility That Defendant Was Convicted of Two Crimes for the Same Offense, in Violation of His Right to Be Free From Double Jeopardy

**{14}** Defendant next contends—under various lines of reasoning, including one based on double jeopardy—that the jury instruction for the second count of child abuse led to a wrongful conviction. The parties dispute whether Defendant preserved the issue of the jury instruction's propriety. We need not resolve this dispute because, even if Defendant did not preserve the issue, we would review the use of the instruction for fundamental error. *See id.* ¶ 11. Fundamental error includes error that "goes to the foundation or basis of a defendant's rights[.]" *Id.* ¶ 13 (internal quotation marks and citation omitted). The right to be free from double jeopardy is among those rights; it is, "[l]ike the right to trial by jury, . . . clearly fundamental to the American scheme of justice." *Benton v. Maryland*, 395 U.S. 784, 796 (1969) (internal quotation marks and citation omitted). Because we conclude that the jury instruction used created the possibility that Defendant was convicted of two crimes for the same offense, in violation of his right to be free from double jeopardy, we necessarily also conclude that the use of the jury instruction constituted fundamental error, and Defendant need not have preserved his objection to it. *Cf.* NMSA 1978, § 30-1-10 (1963) (establishing the right of a defendant to raise the defense of double jeopardy for the first time on appeal).

**{15}** As noted, Defendant argues that the jury instructions on child abuse, taken together, form the basis of a double jeopardy violation. Each instruction was based on the uniform jury instruction, UJI 14-612(2) NMRA, that corresponds to the child abuse statute, NMSA 1978, § 30-6-1 (2009). As previously stated, the first paragraph of the instruction for the first count of child abuse, Count 2 of the amended indictment against Defendant, read: "[Defendant] dropped [S.M.] off at her home[.]" The instruction for the second count of child abuse, Count 3 of the amended indictment, was identical to Count 2's instruction—except for its first paragraph, which read: "[Defendant] allowed [S.M.] to be in a dangerous situation after she was rendered unconscious[.]"

**{16}** Referring to its first paragraph, Defendant argues that "[t]he second instruction appears to encompass the one act described in the first instruction"; under this circumstance, he continues, the jury was allowed to "rely on the same conduct for both counts." The State, meanwhile, argues that it presented evidence sufficient to support each of the two convictions. Specifically, the State argues, the first conviction was based on Defendant's "placing S.M.'s unconscious body in the driveway on a rainy winter's night and failing to ensure that her family was notified[,]" and the second was based on Defendant's "placing S.M. in a dangerous situation at the apartment[.]" Of note, the State does not argue that more than one count of child abuse occurred at S.M.'s home.

**{17}** "The propriety of jury instructions given or denied is a mixed question of law and fact. Mixed questions of law and fact are reviewed de novo." *State v. Salazar*, 1997-NMSC-044, ¶ 49, 123 N.M. 778, 945 P.2d 996. "We review jury instructions to determine whether a reasonable juror would have been confused or misdirected by the jury instructions. We consider jury instructions as a whole, not singly." *State v. Montoya*, 2003-NMSC-004, ¶ 23, 133 N.M. 84, 61 P.3d 793 (citation omitted).

**{18}** The question here is whether the second jury instruction could have confused or misdirected a reasonable juror by leading such a juror to a finding of guilt of a second offense based on Defendant's conduct at S.M.'s home. In light of our affirmance of Defendant's first conviction of child abuse occurring at S.M.'s home, such a finding by the jury would put Defendant in double jeopardy, which is prohibited by the Fifth Amendment of the United States Constitution, an amendment "made applicable to New Mexico by the Fourteenth Amendment[.]" *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The Fifth Amendment's Double Jeopardy Clause specifically provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[,]" U.S. Const. amend. V.; the provision "functions in part to protect a criminal defendant against multiple punishments for the same offense[,]" *Swick*, 2012-NMSC-018, ¶ 10 (internal quotation marks and citation omitted).

**{19}** There are several aspects of this case which may have caused a reasonable juror to have been confused or misdirected as Defendant asserts. First, there was confusion between the parties themselves about what conduct constituted each of the child abuse charges. The State's theory about the factual basis for each charge was unclear at the case's inception: the grand jury indicted Defendant on two identical counts of child abuse under Section 30-6-1(D). There remained confusion on this point during argument on the directed verdict motion. Lastly, during its closing arguments, the State did not explain which of Defendant's acts corresponded to each of the child abuse charges. *See State v. Candelaria*, 2019-NMCA-032, ¶ 37, ___ P.3d ___ (examining, in the context of a double jeopardy issue, the state's closing argument "to determine whether it clarified the factual basis" for each of two counts charged against the defendant), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37644, Apr. 1, 2019).

**{20}** After the defense's closing argument, which likewise did not specify the conduct corresponding to each of the child abuse charges, the jury received the jury instructions, including the two concerning child abuse. The first instruction prompted the jury to determine guilt based on Defendant's conduct at S.M.'s home. The second prompted it to determine guilt based on Defendant's conduct "after [S.M.] was rendered unconscious." S.M. testified that she could not remember anything from the time Defendant pushed her down on the couch at the apartment until she woke up the next day in the hospital. In other words, a reasonable juror could have understood that S.M. was rendered unconscious at the apartment and remained unconscious through the time Defendant left S.M. in the driveway. The second instruction did not specify the setting in which the second alleged child abuse offense took place. Given all this, a reasonable juror might have been misdirected by the second instruction into thinking that the question of whether Defendant "allowed [S.M.] to be in a dangerous situation

after she was rendered unconscious" referred to Defendant's conduct while at S.M.'s home and, specifically, to the act of leaving S.M. unconscious and alone, outside at night, without knowing whether her condition was or would become serious, how long she would be left in that state, or what might happen to her as a result of those circumstances.

{21}    Had the jury been misdirected in such a way, and given that only one act of child abuse was alleged to have occurred at S.M.'s home, a second conviction based on conduct occurring there would expose Defendant to double jeopardy. This result would constitute fundamental error. Accordingly, we must remand this case to the district court with instructions to dismiss Defendant's second conviction. *Cf. State v. Montoya*, 2011-NMCA-074, ¶ 39, 150 N.M. 415, 259 P.3d 820 (concluding that, when one jury instruction supports more than one theory of an offense, it is unclear which of two alternative bases the jury relied on in finding the defendant guilty of that offense, and one of the bases is legally inadequate because it violates a defendant's right to be free from double jeopardy, a conviction arising from the use of that instruction cannot stand); *State v. Cook*, 2006-NMCA-110, ¶¶ 11, 19, 140 N.M. 356, 142 P.3d 944 (vacating a conviction because of the absence in the jury instructions of a factual basis for each of two charges, because of "confused discussions" between the parties about the factual basis for each count, and because of the possibility that the jury found the defendant guilty of the same crime twice for the same conduct).

{22}    Because our conclusion requires that Defendant's second conviction be vacated, we need not address Defendant's remaining arguments challenging his conviction.

## CONCLUSION

{23}    We affirm Defendant's conviction on the first count of child abuse. We remand to the district court with directions to vacate Defendant's conviction on the second count of child abuse.

{24}    **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JULIE J. VARGAS, Judge**